ROTHMAN, SCHNEIDER, SOLOWAY & STERN, LLP

Attorneys at Law
100 Lafayette Street, Suite 501
New York, NY 10013

| | |
|---|---:|
| Franklin A. Rothman | Tel: (212) 571-5500 |
| Jeremy Schneider | Fax: (212) 571-5500 |
| Robert A. Soloway | |
| David Stern | |
| ———— | |
| Rachel Perillo | |

May 18, 2020

**Via ECF & Email**
Hon. Jesse M. Furman
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    Re: United States v. Mustapha Raji
       19 Cr. 870 (JMF)

Dear Judge Furman:

  I am the attorney for Mustapha Raji, the defendant in the above-referenced matter. This letter is respectfully submitted to request Mr. Raji's release from custody with the conditions of home incarceration and electronic monitoring. Mr. Raji, age 49, is a pretrial detainee who was arrested and detained in Florida on December 20, 2019 and has been in custody at the Metropolitan Correctional Center ("MCC") since February 5, 2020. He has no prior criminal record and is charged with a non-violent offense. Mr. Raji suffers from several preexisting medical conditions, including a history of congestive heart failure, high blood pressure, and kidney disease, placing him within the group of people that the Center for Disease Control and Prevention ("CDC") has categorized as at high-risk for contracting COVID-19. Mr. Raji could become seriously ill or die if infected, and infection is likely given the conditions at the MCC, where COVID-19 is spreading through the jail.  Accordingly, in light of the COVID-19 pandemic and Mr. Raji's vulnerable health condition, it is respectfully requested that he be released to home incarceration with electronic monitoring, and any other conditions the Court finds necessary. AUSA Eun Young Choi informs me that the government will oppose this application.

  It is also respectfully requested that a telephonic bail hearing be held as soon as possible at a date and time that is convenient for the Court. Mr. Raji has been informed of his right to be present and waives his appearance.

1

1.     **Procedural Background and Proposed Release Conditions**

Mr. Raji is charged in the instant four-count indictment with (1) Attempt and Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. §§ 1343 and 1349; (2) Wire Fraud, in violation of 18 U.S.C. §§ 1342 and 2; (3) Receipt of Stolen Funds, in violation of 18 U.S.C. §§ 2315 and 2; and (4) Money Laundering Conspiracy, in violation of 18 U.S.C. §§ 1956 and 1957. As mentioned, Mr. Raji was arrested and detained on December 20, 2019 in the Southern District of Florida. He was transferred to this District on February 5, 2020, making his initial appearance before Magistrate Judge Sarah Netburn, and was detained on consent without prejudice. On February 7, 2020, Mr. Raji was arraigned before your Honor. This is his first application for release from custody.

It is respectfully proposed that Mr. Raji be released on a $100,000 personal recognizance bond signed by two financially responsible persons.[1] If released, he would reside at his home in the Southern District of Florida, located at 2013 Adams Street, Unit 5, Hollywood, Florida 33020, where he would remain on home incarceration and be subject to electronic monitoring, with the requested condition that he be permitted to attend his medical appointments as needed, with the approval of pretrial, and any other conditions that the Court deems appropriate.

Mr. Raji is neither a flight risk nor a danger to the community, and the proposed conditions of release will further ensure that he does not flee. Notably, the charged offense conduct is alleged to have occurred from July to September of 2018, and Mr. Raji's alleged co-conspirator, Nancy Martino-Jean, was arrested on September 16, 2018, charged in *United States v. Nancy Martino-Jean*, 18 Cr. 853 (NRB), and sentenced on October 17, 2019, and at no point during her prosecution did Mr. Raji flee or attempt to avoid authorities. Mr. Raji is a Canadian citizen who has lived at the above-cited address since 2017, and has lived and worked in the United States since approximately 2013. It is my understanding that a detainer has been lodged by the U.S. Immigration and Customs Enforcement ("ICE"), but this should not prevent the Court from fashioning conditions of release which will vitiate any risk of flight.[2] While on home incarceration and subject to electronic monitoring, pretrial services will be able to monitor Mr. Raji's movements, ensuring that he will not flee or engage in criminal activity. Moreover, even if home incarceration were not a condition, he has every incentive not to flee – the present circumstances of the pandemic and Mr. Raji's vulnerability to COVID-19 will force him to shelter in place, and as discussed in further detail below, he had recently been receiving medical treatment at a highly regarded hospital in Orlando, Florida, and his health and safety therefore depend on him remaining in that area for treatment. Finally, Mr. Raji poses no risk of danger to the community, as he has no prior record, no history of violence, and is not charged with a

---

[1] My office has spoken with two close friends of Mr. Raji's who are willing to serve as co-signers on the proposed bond, both of whom are hardworking, responsible individuals: First, is Mr. Raji's close friend of eight years, Cheri Backman, who resides in Kissamee, Florida. For the last four years Ms. Backman has been employed as a pharmacy supervisor for CVS/Caremark, earning approximately $70,000 a year. Second, is Mr. Raji's friend of several years, Sergena St. Fort, who resides in Miami, Florida and who often assisted Mr. Raji with transportation to and from his medical appointments. Ms. St. Fort works as a pastry chef at the Four Seasons Hotel in Miami, earning approximately $36,000 a year.

[2] I have been informed by the Office of the Federal Defenders that since April 1, 2020, they are aware of at least nine cases in the Southern District of New York in which ICE had declined to enforce its detainer after pretrial bail was granted.

violent offense. Accordingly, the combination of conditions proposed will ameliorate any risk of flight or danger to the community.

**2.     Mr. Raji's Medical History**

Mr. Raji has a well-documented history of serious medical conditions that make him particularly susceptible and vulnerable to COVID-19, including congestive heart failure, essential hypertension, and a recent diagnosis of Stage 3 Chronic Kidney Disease.[3] As discussed below, these conditions require consistent, comprehensive medical treatment, which Mr. Raji had been regularly receiving prior to his arrest in this case.

In December 2017, Mr. Raji was diagnosed with non-ischemic cardiomyopathy, a common cause of heart failure, and was hospitalized for ten days in Atlanta, Georgia. In August 2019, he was hospitalized again as a result of "acute exacerbation of his systolic heart failure" and hypertension. During this hospitalization he was also diagnosed with Chronic Kidney Disease, Stage 3. Following the August 2019 hospitalization, Mr. Raji had been going for follow-up treatment at the Orlando Heart Health Institute in Orlando, Florida for issues related to his heart failure and kidney disease, traveling to the hospital every two weeks for treatment, sometimes staying overnight for testing. At each bi-weekly visit it was necessary that he be evaluated to determine whether his medication needed to be recalibrated in accordance with fluctuations in his blood pressure and other changes in his health, and between August and December 2019, his medications had changed four times. He had also been undergoing remote monitoring, which required him to submit his vitals to the Orlando hospital on a daily basis. Additionally, Mr. Raji had sought a second opinion from a cardiologist in Wilmington, Delaware who had scheduled him for a procedure in January 2020 to determine if he needed a stent placement and pacemaker; he missed this appointment due to his present incarceration. He is currently taking the following medications: Hydralazine, 50 mg, 3 tabs, twice a day; Chlorthalidone, 25 mg, 1 1/2 tabs per day; Losartan Potassium, 50 mg 2 tabs per day; Amlodipine 10 mg, 1 tab per day; and Aspirin 81 mg, 1 tab per day. Mr. Raji has also been diagnosed with sleep apnea, obesity, and has suffered a brain aneurism in the past.

Most recently, Mr. Raji was hospitalized for dangerously high blood pressure immediately following his arrest in Florida on December 20, 2019, and was admitted to the ICU at Broward County Hospital for four days. Once he returned to Broward County Correctional Facility, he was housed in the infirmary for one month until being transferred to a detention facility in Miami. While at the Miami facility, Mr. Raji saw a doctor every three days for the two weeks he was there. Thereafter, he was transferred to a detention facility in Oklahoma for approximately two weeks, the last facility before his arrival at MCC, and received no medical treatment there.

Mr. Raji's heart conditions place him at high risk of serious illness from COVID-19, according to the CDC, which advises that the best way for vulnerable people like Mr. Raji to

---

[3] *See* Exhibit A, Mr. Raji's health records from Orlando Heart Health Institute. These records will be redacted from the public docket and will be separately provided to the Court and the government.

3

prevent infection is to avoid being exposed to the virus.[4]  The CDC also advises that to prevent complications from COVID-19 persons with such conditions should take their medications "exactly as prescribed", have a "two week supply" on hand, and "should continue to manage and control their blood pressure."[5] Additionally, kidney disease is considered to be a high risk factor for COVID-19, and new research shows evidence of COVID-19 causing kidney damage even to those who had no underlying conditions.[6] Specifically, "30% of patients hospitalized with COVID-19 in China and New York developed moderate or severe kidney injury," and doctors in New York say the percentage could actually be much higher.[7]

Alarmingly, despite Mr. Raji's vulnerable state of health, **he has not yet been evaluated by a doctor since arriving at the MCC on February 5, 2020**.[8] Since then he has made approximately five written requests and several oral requests for medical treatment, including an emergency request when he was experiencing chest tightness and pain on his left side, all of which went ignored. Although Mr. Raji has been taking his medication, his prescription refills are sometimes delayed causing him to go days without any medication, and his medication has not been recalibrated since prior to his arrest, meaning that his current dosage is likely inadequate to meet his present medical needs. Additionally, Mr. Raji had been prescribed a low-sodium diet for his high blood pressure, but the MCC has not (and likely cannot) provide him with such. He continues to be served high-sodium foods, which he cannot eat because doing so would worsen his already poor health. Accordingly, irrespective of COVID-19, Mr. Raji faces serious health consequences while housed at the MCC due to the jail's clear inability to accommodate his comprehensive medical needs, but the threat posed by the virus places him in even greater danger.

### 3. **The COVID-19 Pandemic**

By now, the Court is more than familiar with the outbreak of COVID-19, the disease caused by the highly contagious novel-coronavirus, and the devastation it has caused to millions of Americans and throughout the world. The first case of coronavirus in New York State was announced on March 1, 2020. As of this writing, New York has reported **355,037** positive cases with over **28,168** deaths.[9] More than half of these cases are in New York City, the "epicenter of the virus", which most recently reported over **197,486** positive cases and over **20,214** deaths.[10]

---

[4] *Coronavirus Disease 2019 (COVID-19): Groups at Higher Risk for Severe Illness* (April 17, 2020), at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html#serious-heart-conditions.
[5] *Id.*
[6] *COVID-19 Kidney Damage: A Possible Complication*, Johns Hopkins Medicine (May 6, 2020), at https://www.hopkinsmedicine.org/health/conditions-and-diseases/coronavirus/coronavirus-kidney-damage-caused-by-covid19.
[7] *Id.*
[8] At most, Mr. Raji met with an MCC staff member who was neither a doctor nor a nurse when he first arrived; however, no testing or evaluation was conducted.
[9] *New York Coronavirus Map and Case Count*, The New York Times (Updated May 18, 2020), at https://www.nytimes.com/interactive/2020/us/new-york-coronavirus-cases.html.
[10] *Id.*

We learned early on that people with serious underlying medical conditions, like Mr. Raji's, are at heightened risk for COVID-19.[11] As the Court knows, there is currently no cure or vaccine to prevent COVID-19, and health experts agree that the best way to prevent illness is to avoid being exposed to the virus. The Court is well aware of the CDC's issued recommendations for reducing the virus' spread, such as refraining from crowds, staying six feet apart from others (especially those who are sick), continuous hand washing, and frequent cleaning and disinfecting of surfaces, and that persons at high risk of contracting COVID-19, such as those with underlying medical conditions, are advised to take immediate preventative measures, including avoiding crowded areas and staying home as much as possible.[12]

### 4.   **The MCC Cannot Protect At-Risk Inmates**

The MCC, which houses approximately 700 inmates, remains unequipped to protect those who are at risk. While the Bureau of Prisons has issued a response protocol to address the spread of COVID-19, its efforts seem to be futile. The CDC has issued specific guidance to correctional and detention facilities for managing and responding to the virus' spread,[13] and a review of the present conditions at MCC make it apparent that the facility is not following these guidelines: some inmates (like Mr. Raji) share two-person cells (originally designed for one person) and approximately 150 inmates are confined in large dormitory style settings, sleeping 3 to 5 feet apart; they share toilets, sinks, and showers without disinfection between each use; they share phones and computers without disinfection between each use; inmates are not permitted to have hand sanitizer and many inmates lack access to soap (which they are unable to buy themselves because commissary is closed); inmates are responsible for cleaning housing units and common areas and lack adequate cleaning supplies to do so; inmate orderlies clean the infected, quarantined units wearing surgical masks and return to their units without being provided the opportunity to change clothes or disinfect themselves; inmates are only screened for COVID-19 if they self-report symptoms (which many are afraid to do out of fear that they will be quarantined in isolation in a special housing unit normally intended for punishment); and numerous inmates have reported requests for medical attention that have gone unanswered (which is the case for Mr. Raji, and the same has been true for other clients of mine).[14]

On March 25, 2020, it was reported that only one inmate at the MCC tested positive for COVID-19. As of May 14, 2020, 44 staff members and **five inmates** have tested positive.[15]

---

[11] *Coronavirus Disease 2019 (COVID-19): Groups at Higher Risk for Severe Illness* (Last Updated April 17, 2020), at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html
[12] *Id.*
[13] *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Center for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf.
[14] *See Cesar Fernandez-Rodriguez et al. v. Marti-Licon-Vitale*, 20 Civ. 3315 (ER), Declaration of Deirdre R. Von Dornum (April 28, 2020), ECF Doc. 7 at 16 -18; *see also Id.*, Supplemental Declaration of Dierdre R. Von Dornum (May 5, 2020), ECF Doc. 25.
[15] M. Licon-Vitale, MCC Warden and D. Edge, MDC Warden, Response to EDNY Administrative Order 2020-14, Federal Bureau of Prisons (May 14, 2020), at
https://www.nyed.uscourts.gov/pub/bop/MDC_MCC_20200514_034839.pdf.

However, **the MCC has only tested 10 inmates in total**.[16] The low number of tests gives reason to believe that the MCC is not sufficiently protecting inmates from each other and staff who are highly contagious. Without testing, it is impossible to identify infected inmates, effectively isolate them, and quarantine those with whom they had contact, resulting in increasing spread, and ultimately, death. In comparison, in New York state-run facilities in the region, there are 370 tested-positive inmates on Rikers Island,[17] where testing is more robust; likewise, at Westchester County jail, as of May 15, 2020, 54 inmates and 134 staff have tested positive.[18] Additionally, at the privately run Queens Detention Facility, as of May 14, 2020, 41 inmates have been tested and 38 tested positive.[19]

Across the BOP, even with frighteningly low levels of testing, tested-positive cases have risen since March 20, 2020, from 2 confirmed cases among inmates and staff to 4,173 inmates (1,353 recovered) and 548 staff (282 recovered).[20] 55 federal inmates have already died from COVID-19.[21] It is also worth noting that asymptomatic inmates may be infected, may or may not get sick, but will indeed infect others. The low numbers of inmates testing positive for COVID-19 at MCC is deceiving, and the numbers will remain low if the MCC does not test inmates. Thus, there is strong reason to suspect that if MCC increased testing the actual number of MCC inmates for COVID-19 the number of positive cases would be significantly higher.[22]

### 5. **Mr. Raji is at Heightened Risk of Serious Illness or Death While Confined at MCC**

Mr. Raji is in great danger while incarcerated at MCC. His preexisting health conditions make him vulnerable to COVID-19, and given the living conditions described above, it is very likely that he will get infected and become seriously ill, or die, as his already weakened heart and kidneys would sustain further damage from an infection. The MCC has already failed to provide Mr. Raji with medical care for his current health issues – he has never been evaluated by a doctor since his arrival on February 5 and has repeatedly been refused access to one; there are delays in his prescription refills and his medication has not been recalibrated in months (prior to his arrest, he had never gone longer than two weeks without being evaluated for recalibration), and he continues to be served high-sodium foods that are harmful to persons with high blood pressure. As the MCC prioritizes tending to inmates diagnosed with or showing symptoms of COVID-19, Mr. Raji's medical needs will surely continue to go ignored.

---

[16] *Id.*
[17] *COVID-19 Infection Tracking in NYC Jails*, The Legal Aid Society (Updated May 8, 2020), at https://www.legalaidnyc.org-covid-19-infection-tracking-in-nyc-jails/ (Note that this number does not include inmates who have tested positive but have since been released, transferred, or have died)
[18] As reported by Federal Defenders.
[19] William Zerillo, Facility Administrator Queens Detention Facility, Response to EDNY Administrative Order 2020-14, GEO Secure Services Queens Detention Facility (May 14, 2020), at https://www.nyed.uscourts.gov/pub/bop/QDF_20200514_034857.pdf.
[20] As reported by Federal Defenders on May 13, 2020; *see also* COVID-19 Cases, Federal Bureau of Prisons (Updated daily), at https://www.bop.gov/coronavirus/.
[21] *Id.*
[22] *See Cesar Fernandez-Rodriguez et al. v. Marti Licon-Vitale*, 20 Civ. 3315 (ER), Declaration of Deirdre R. Von Dornum (April 28, 2020), ECF Doc. 7 at 15.

Moreover, Mr. Raji's release should not be precluded merely because he has not reported symptoms of COVID-19. The CDC's guidelines emphasize *preventing* infection by avoiding exposure to the virus, since there is not much that can be done once a person is infected. Furthermore, the Department of Justice has recognized the need to mitigate risk of infection for incarcerated individuals.  In a memorandum to the BOP, Attorney General Barr highlighted the need to protect inmates before they become infected, stating "we have to move with dispatch in using home incarceration, where appropriate, to move *vulnerable* inmates out of these institutions."[23]  Indeed, Mr. Raji's history of congestive heart failure, hypertension, and kidney disease make him *vulnerable* to serious health consequences if he were to contract COVID-19, and if he becomes infected, it may be too late. As a non-violent pretrial detainee with no criminal record, Mr. Raji should not have to wait until he becomes critically ill in order to have the possibility of bail considered.

Of course, Mr. Raji will be much safer while on home incarceration, where he would be living alone in his townhouse apartment, a sanitary environment with a private entrance and outdoor space, and with ready access to cleaning supplies. He has several friends and family members nearby who can assist with dropping off his medications or any other needs that may arise in order to reduce his exposure to the virus. Most importantly, Mr. Raji needs to be regularly evaluated by his doctors, he needs consistent medication with regular recalibration, and he needs immediate access to medical care in emergency situations. This can only be accomplished if he is released from custody on the proposed conditions.

Accordingly, the COVID-19 pandemic in combination with Mr. Raji's preexisting medical conditions should warrant his release from custody to home incarceration with electronic monitoring, with the condition that he be permitted to attend medical appointments as needed and approved by pretrial.

I thank your Honor for your attention to this matter.

Respectfully submitted,

/s/

Jeremy Schneider

cc:   AUSA Dina McCleod (By ECF & Email)
      AUSA Eun Young Choi (By ECF & Email)

---

[23] *Memorandum for Director of Bureau of Prisons*, Office of the Attorney General (April 3, 2020), available at https://www.politico.com/f/?id=00000171-4255-d6b1-a3f1-c6d51b810000 (emphasis added)