UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
UNITED STATES OF AMERICA  :
:
   - v. -  :
:     19 Cr. 870 (JMF)
MUSTAPHA RAJI  :
:
       Defendant.  :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

 

AUDREY STRAUSS
United States Attorney for the
Southern District of New York

Dina McLeod
Eun Young Choi
Assistant United States Attorneys
   - Of Counsel -

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ................................................................................................................. i
**PRELIMINARY STATEMENT** .................................................................................................. 1
**BACKGROUND** ........................................................................................................................... 1
**ARGUMENT** ................................................................................................................................. 6
   I.   THE DEFENDANT'S CELLPHONES WERE LAWFULLY SEIZED PURSUANT TO THE PLAIN VIEW DOCTRINE ........................................................................................ 6
      A.  Applicable Law ............................................................................................................ 6
      B.  Discussion .................................................................................................................... 7
   II.  THE DEFENDANT'S UNLOCKING OF HIS CELLPHONE IN RESPONSE TO PEDIGREE QUESTIONS PROVIDES NO BASIS FOR SUPPRESSION OF HIS CELLPHONES ............................................................................................................... 10
   III.  AN EVIDENTIARY HEARING IS NOT WARRANTED ......................................... 13
**CONCLUSION** ........................................................................................................................... 15

**PRELIMINARY STATEMENT**

The Government respectfully submits this brief in opposition to the defendant's motion to suppress filed on January 15, 2021. (*See* Dkt. No. 54 ("Def. Mem.")). Specifically, defendant Mustapha Raji seeks to suppress evidence taken from two cellular phones ("the Raji Cellphones") seized from his residence at the time of his arrest. The defendant contends that law enforcement agents had no lawful basis to seize the Raji Cellphones.

The defendant's motion to suppress should be denied. *First*, law enforcement lawfully seized the Raji Cellphones pursuant to the plain view doctrine. *Second*, the defendant's unlocking of his cellphone in response to pedigree questions from law enforcement does not provide a basis for suppression of the Raji Cellphones. *Finally*, the defendant has not set forth any material disputed question of fact that would require an evidentiary hearing to resolve. His request for a hearing should therefore also be denied.

**BACKGROUND**

**A. The Offense Conduct**

On December 4, 2019, a grand jury in this District issued an indictment charging the defendant in four counts: (1) conspiracy to commit wire fraud in violation of Title 18, United States Code, Section 1349, (2) wire fraud in violation of Title 18, United States Code, Section 1343, (3) receipt of stolen funds, in violation of Title 18, United States Code, Section 2315, and (4) money laundering conspiracy in violation of Title 18, United States Code, Section 1956(h)—

all in connection with a scheme to fraudulently induce a victim to send an interstate wire transfer in the amount of approximately $1.7 million to a bank account controlled by a co-conspirator.[1]

In a court filing by the Government in connection with the defendant's detention hearing in the Southern District of Florida, the Government proffered the following facts about the defendant's role in the offense.  (*See* Gov't Proffer of Facts, attached as Exhibit B).   As described in greater detail below, the defendant was involved in important aspects of a business email compromise scheme which defrauded a Manhattan-based hedge fund (the "Victim Company") of approximately $1.7 million dollars, by among other things, being a registered officer of a company that received the stolen funds, directing co-conspirators to the account to which stolen funds were diverted from the Victim Company, and working to fabricate documents to cover up the fraudulent transfer of funds from the Victim Company.

Specifically, in July 2018, the Victim Company was the victim of a business email compromise,[2] which led to a fraudulent $1.7 million wire being sent to a Florida bank account in the name of "Unique Bamboo Investments," which was controlled by Nancy Martino-Jean. (*Id.* ¶ 1).  According to Florida public records, Nancy Martino-Jean is the President of Unique Bamboo Investments, and the defendant is the Vice-President. (*Id.* ¶ 2).  Martino-Jean wired the

---

[1] That co-conspirator was Nancy-Martin-Jean.  Over a year before the defendant's indictment, on or about September 15, 2018, Martino-Jean was charged in Complaint 18 Mag. 8070 (attached as Exhibit A) with wire fraud, in violation of Title 18, United States Code, Section 1343 and receipt of stolen funds, in violation of Title 18, United States Code, Section 2315.  Martino-Jean was later indicted and her case assigned to Honorable Naomi Reice Buchwald.  *See United States v. Martino-Jean*, 18 Cr. 853 (NRB).  Martino-Jean has pleaded guilty and been sentenced.

[2] A business email compromise scheme is a fraud scheme that is effected via a fraudulent email.  In such a scheme, the perpetrator sends an email message that appears to come from a known source making a legitimate request (for example, a homebuyer receives a message from his title company with instructions on how to wire his down payment).  The fraud can be accomplished in various ways—for example, through a spoofed email address or through a spearphishing email or malware that permits the perpetrator to access the victim email account.

defendant $50,000 of the fraudulent funds directly. (*Id.* ¶ 3). In addition, based on email search warrant returns, on July 29, 2018, an individual named Timothy Oyewole emailed his wire information to the defendant. On August 2, 2018, Martino-Jean wired $25,000 to Oyewole. On August 3, 2018, Oyewole wired $10,000 to Timmins Properties Limited—which, according to Canadian public records, is a Canadian company controlled by the defendant's brother, Dauda Raji. (*Id.* ¶ 4).

Based on Google search history obtained via search warrant, on or about August 12, 2018—approximately two weeks after the fraudulent wire transfer was sent to her account from the Victim Company—Martino-Jean searched for the name of the Victim Company. Based on the information provided by Google, this was the first and only search by Martino-Jean which contained the name of the Victim Company. (*Id.* ¶ 5).

On August 13, 2018, according to search warrant returns from Google, Martino-Jean searched for, among other things, "how to remove everything from a computer." In addition, on that same day, Martino-Jean visited a webpage entitled "How to erase my hard drive and start over," which contained detailed instructions on how to erase all of the information on a hard drive. (*Id.* ¶ 6).

Based on evidence obtained from from Martino-Jean's email account, as well as from an email account belonging to the defendant, on or about August 15 and August 16—just days after Martino-Jean searched for "how to remove everything from a computer"—the defendant (along with another individual) forwarded Martino-Jean various scanned documents which purported to be a loan agreement between Unique Bamboo Investments and the Victim Company. However, the signature page of that purported agreement bears a notarization, but no signatures, indicating

that the document is fraudulent, and likely fabricated to cover up the fraudulently induced transfer from the Victim Company. (*Id.* ¶ 7).

The attempted cover-up in which the defendant participated is consistent with the false story Martino-Jean told the FBI during an interview after her arrest in September 2018. During that interview, she falsely told the FBI that the funds were a loan from the Victim Company to Unique Bamboo Investments. (*Id.*).

In addition, the Government proffered that witness testimony would establish that the defendant was the person who provided the Unique Bamboo Investments bank account to co-conspirators so that the stolen funds could be deposited there. (*Id.* ¶ 8).

**B. The Defendant's Arrest**

On or about December 13, 2019, the FBI attempted to arrest the defendant at his residence in Florida, but the defendant was not there. (*See* Affidavit of Special Agent Vincent Lai ("Lai Aff.") ¶ 8, attached as Exhibit C). The FBI then obtained a location monitoring warrant for a cellphone used by the defendant. In the affidavit in support of that warrant, an FBI agent articulated facts to support probable cause that the defendant used the targeted cellphone and that indicated the defendant used that cellphone in furtherance of his criminal activity—specifically, that he had used a cellphone to call a bank and request that a hold be removed from one of his accounts and, on a separate occasion, to inform the bank of an incoming transfer of funds. (*Id.* ¶ 9).

On or about December 20, 2019, the defendant was arrested at his home in Florida pursuant to an arrest warrant signed by a magistrate judge in the Southern District of New York. After the defendant's arrest, FBI agents accompanied the defendant as he got dressed and collected his medications. (Dkt. 55-1, Mulloy Aff. ¶ 12(a)). As FBI agents waited with the

4

defendant in the kitchen-area of the home, the defendant stated, in sum and substance, that he would like to make a phone call. (*Id.* ¶ 12(b)). An arresting FBI agent observed the Raji Cellphones on the other side of the room, near a couch. (*Id.* ¶ 12(c)). The agent asked the defendant, in sum and substance, "Are these your phones?" (*Id.*). The defendant responded in the affirmative. (*Id.*).

The arresting agents took the defendant, along with the Raji Cellphones, to an FBI office to complete the booking process. (*Id.* ¶ 12(d)). As part of the pedigree process, FBI agents asked the defendant for contact information for a friend or family member. (*Id.*). The defendant identified a person and stated, in sum and substance, that the phone number for that person was contained in one of the Raji Cellphones. (*Id.*). The defendant provided the PIN for that cellphone to an FBI agent, who opened the cellphone, then handed it to the defendant so that he could read out the phone number. (*Id.*). This same process was then repeated for a different contact person for the defendant. (*Id.*).

FBI agents subsequently inventoried the Raji Cellphones. (*Id.* ¶ 12(f)). The Government later obtained a Court-authorized search warrant to review the contents of the Raji Cellphones.

### C. The Defendant's Motion

The defendant seeks to suppress the Raji Cellphones on the ground that "law enforcement officers did not have a warrant to seize the phones," "Mr. Raji did not consent to the seizure of his phones," and "no facts exist to suggest that the warrantless seizure of Mr. Raji's cell phones would fall under any exception to the warrant requirement." (Def. Mem. at 4).

The defendant submitted an affidavit in support of his motion. (Dkt. No. 56-1, "Def. Aff."). In his affidavit, the defendant averred, in substance and in part, that he was sleeping in the living room of his home on December 20, 2019, when law enforcement agents knocked on

5

the door and arrested him. (*Id.* ¶ 2). The defendant was brought to the living room area while the agents gathered some of his personal belongings to take with them. (*Id.* ¶¶ 6-7). As the agents began to escort him out of the home, one agent asked the defendant, in sum and substance, "where are your phones?" (*Id.* ¶ 8). The defendant did not respond to the agent. (*Id.*) As he left the house, the defendant observed an agent carrying two of his cellphones.[3] (*Id.* ¶ 9).

The defendant was driven to an office, and instructed to provide the agents with certain contact information. (*Id.* ¶ 10). The defendant told the agents that the phone numbers would be in one of the phones in the agents' possession. (*Id.*). An agent instructed the defendant to unlock the phone, and because he did not think he could refuse, the defendant complied. (*Id.*). The agents then retrieved the information from the phone. (*Id.*).

## ARGUMENT

### I. THE DEFENDANT'S CELLPHONES WERE LAWFULLY SEIZED PURSUANT TO THE PLAIN VIEW DOCTRINE

Even assuming the facts set forth in the defendant's affidavit are true, the Raji Cellphones were lawfully seized pursuant to the plain view doctrine. The seizing agents observed the Raji Cellphones in plain view and had probable cause to believe that they contained evidence of the defendant's criminal activity, particularly given evidence that the defendant used at least one cellphone in furtherance of the fraud scheme.

#### A. Applicable Law

The "plain view" doctrine is a recognized exception to the Fourth Amendment requirement of a warrant for seizures. *See, e.g.*, *Horton v. California*, 496 U.S. 128, 134 (1990) (objects in plain view are not found through a privacy-invading search; thus, "[i]f 'plain view'

---

[3] The defendant's memorandum of law states that "Mr. Raji did not observe the officers locating and seizing his phones." (Def. Mem. at 4). However, that fact is not asserted in the defendant's affidavit.

6

justifies an exception from an otherwise applicable warrant requirement, . . . it must be an exception that is addressed to the concerns that are implicated by seizures rather than by searches"). Under the plain-view exception, "if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." *United States v. Delva*, 858 F.3d 135, 149 (2d Cir. 2017) (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993)). "If an article is already in plain view, neither its observation nor its seizure would involve any invasion of privacy." *Horton*, 496 U.S. at 133.

The Supreme Court has clarified that the seizing agent need only have probable cause of the object's incriminating character, and noted that probable cause "does not demand any showing that such a belief be correct or more likely true than false. A practical, nontechnical probability that incriminating evidence is involved is all that is required." *Texas v. Brown*, 460 U.S. 730, 741 (1983) (internal quotation marks omitted).

### B. Discussion

The Raji Cellphones were in plain view. The law enforcement agents were lawfully in the defendant's home, effecting an arrest pursuant to an arrest warrant, and the Raji Cellphones were readily observable from across the room. (Mulloy Aff. ¶ 12(c) ("An arresting FBI agent observed the Raji Cellphones on the other side of the room, near a couch.")). The defendant's affidavit is not inconsistent with that description in the Mulloy Affidavit, nor does it dispute that the Raji Cellphones were in plain view.

In addition, the incriminating nature of the Raji Cellphones was immediately apparent to the agents. *United States v. Babilonia*, 854 F.3d 163, 180 (2d Cir. 2017) ("Seizure of everyday objects in plain view is justified where the officers have probable cause to believe that the

objects contain or constitute evidence."). Indeed, prior to the defendant's arrest, the agents had obtained a warrant to monitor the location of the defendant's cellphone. (*See* Lai Aff.) In the affidavit in support of that warrant, Agent Lai set forth facts indicating that the defendant used the targeted cellphone in connection with the criminal activity under investigation.

Specifically, Agent Lai explained that there was probable cause to believe the defendant used the targeted cellphone because "[o]n or about October 24, 2019, an investigator for Bank-1 called RAJI at the number for the Target Cellphone to ask RAJI a question about a transfer of funds," (Lai Aff. ¶ 9(a)); "[o]n or about October 30, 2019, RAJI called an investigator at Bank-1 from the number for the Target Cellphone to ask that Bank-1 remove a hold on one of RAJI's accounts," (Lai Aff. ¶ 9(b)); and "[o]n or about November 15, 2019, RAJI called an investigator at Bank-1 from the number for the Target Cellphone to inform Bank-1 that certain funds would be deposited into RAJI's accounts within the next week," (Lai Aff. ¶ 9(c)). In light of the crimes under investigation, which included wire fraud, receipt of stolen funds, and money laundering, it was reasonable to believe that these phone calls to the bank were in furtherance of the defendant's criminal activity.

Thus, at the time of the arrest, the investigating agents had reason to believe, at a minimum, that the defendant had recently used a cellphone to facilitate his criminal activity; that fact alone is sufficient to establish probable cause to seize the cellphones that were in plain view. *See United States v. Kidd*, 386 F. Supp. 3d 364, 372–73 (S.D.N.Y. 2019) (concluding that there was probable cause to seize a cellphone in plain view where a previously-obtained location monitoring warrant had set forth facts indicating that the defendant used a cellphone in furtherance of his criminal activity).

However, the agents had additional reason to believe, at the time of arrest, that the defendant's cellphones likely contained evidence of criminal activity. Well before the defendant's arrest, on or about September 26, 2018, the FBI had obtained a search warrant for a cellphone seized from the defendant's co-conspirator, Nancy Martino-Jean, at the time of her arrest.[4] In the affidavit of support of that search warrant, Special Agent Michael Ryan[5] affirmed that:

> [B]ased on my training and experience, and my participation in this investigation, I know that participants in business email compromise schemes often maintain contact information relating to their criminal associates—including names, telephone numbers, direct connect numbers, and/or addresses—and store records relating to their illegal activity on electronic devices such as the Subject Device. Such records can include, for example, logs of online "chats" with co-conspirators; email correspondence; contact information of co-conspirators, including telephone numbers, email addresses, and identifiers for instant messaging and social medial accounts; stolen financial and personal identification data, including bank account numbers, credit card numbers, and names, addresses, telephone numbers, and social security numbers of other individuals; and/or records of illegal transactions using false or stolen financial and personal identification data. Individuals engaged in such criminal activity often store such records in order to, among other things, (1) keep track of co-conspirator's contact information; (2) keep a record of illegal transactions for future reference; (3) keep an accounting of illegal proceeds for purposes of, among other things, dividing those proceeds with co-conspirators; and (4) store false or stolen data for future exploitation.

(*See* Ryan Aff. ¶ 14, attached as Exhibit D). Thus, at the time of the defendant's arrest, the seizing agent knew that cellphones possessed by suspects in these particular type of fraud schemes often contain evidence of the criminal activity. And as discussed above, the agents

---

[4] The search warrant, and supporting affidavit, for the Martino-Jean cellphone (as well as responsive materials from the Martino-Jean cellphone) have been produced to the defendant in Rule 16 discovery.

[5] An FBI "Collected Item Log" prepared in connection with the defendant's arrest (which has been produced to the defendant in Rule 16 discovery) indicates that Agent Ryan was the agent who seized the Raji Cellphones.

9

knew that this specific defendant had likely been using a cellphone in furtherance of his criminal activity. Moreover, the agents had relied on these facts in obtaining search warrants in this case, both of which were approved by a neutral magistrate judge. Accordingly, the agents had probable cause to believe that the Raji Cellphones, which were in plain view, contained evidence of the defendant's criminal activity, and were lawfully seized. *See Babilonia*, 854 F.3d at 180.

## II. THE DEFENDANT'S UNLOCKING OF HIS CELLPHONE IN RESPONSE TO PEDIGREE QUESTIONS PROVIDES NO BASIS FOR SUPPRESSION OF HIS CELLPHONES

The defendant asserts that, in connection with the agents' request for contact information, an agent instructed him to unlock his phone, and he did so, because he did not feel he could refuse. (Def. Aff. ¶ 10). The agents then retrieved the information from the phone. (*Id.*). The defendant's memorandum is silent as to how these facts provide a basis for suppression of two seized cellphones due to a purported Fourth Amendment violation. Rather, these facts seem to suggest a Fifth Amendment claim.

In any event, any claim under the Fourth or Fifth Amendment fails as moot. Moreover, even on the merits, the asserted facts provide no support for the defendant's motion to suppress.

### A. Applicable Law

The Fifth Amendment ensures that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. To preserve this right in the interrogation room, "an individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation[,] ... of [his] right to remain silent[,] and that anything stated can be used in evidence against him" before he is questioned. *Miranda v. Arizona*, 384 U.S. 436, 471 (1966).

Not all questions require Miranda warnings, however. Officers are not required to give Miranda warnings for "routine booking question[s] ... reasonably related to the police's

10

administrative concerns" and used "to secure the biographical data necessary to complete booking or pretrial services," so long as the questions are not "designed to elicit incriminating admissions." *Pennsylvania v. Muniz*, 496 U.S. 582, 601–02 & n.14 (internal quotation marks omitted).

The booking exception to *Miranda* applies when three elements are satisfied: "(1) the question asked by law enforcement seeks biographical data necessary to complete booking or pretrial services, (2) appear[s] reasonably related to the police's administrative concerns, and (3) the question is not likely to elicit an incriminating response." *United States v. Durand*, 767 F. App'x 83, 87 (2d Cir. 2019) (internal quotation marks omitted).

### B. Discussion

The defendant asserts that, in connection with the agents' request for contact information, he told the agents that the phone numbers would be in one of the phones in the agents' possession. (Def. Aff. ¶ 10). He claims that an agent instructed him to unlock his phone, and he did so, because he felt he could not refuse. (*Id.*). The agents then retrieved the information from the phone. (*Id.*).

To the extent that the defendant is suggesting that the retrieval of information from the phone in order to answer pedigree questions was a Fourth Amendment violation, the point is moot. The Government does not intend to offer any evidence from that initial retrieval of information in its case-in-chief. Nor did the Government rely on any evidence from that initial retrieval of information to establish the probable cause that supported the search warrant it obtained for the Raji Cellphones.

Any claim under the Fifth Amendment is similarly moot because the Government does not intend to offer any of the defendant's responses to the pedigree questions, or the fact that he unlocked one of the Raji Cellphones, in its case-in-chief.

In any event, any such claim would fail on the merits. As to the Fourth Amendment, the defendant consented to the search of his cellphone for the limited purpose of obtaining the contact information, and there is no allegation that the agents exceeded the scope of that consent. Furthermore, even assuming suppression of any evidence obtained from the cellphone is not warranted under the "independent source" doctrine. Under this doctrine, "evidence may be admissible when law enforcement obtains a valid search warrant . . . based on sources entirely unconnected to the unlawful search." *See United States v. Borrero*, No. 13 Cr. 58 (KBF), 2013 WL 5797126, at *7 (S.D.N.Y. Oct. 28, 2013), *aff'd*, 630 F. App'x 20 (2d Cir. 2015). Here, the FBI later obtained a search warrant for the Raji Cellphones which was based on evidence entirely unconnected to the search resulting from the pedigree questions.

Similarly, as to any purported Fifth Amendment violation, the defendant's account of unlocking his phone for the agents does not establish a Fifth Amendment violation. To the extent unlocking a phone is testimonial, that action was in response to pedigree questions from the agents. As is clear from the pedigree questionnaire itself, the agents were simply filling out standard forms provided by the U.S. Marshals. (*See* Pedigree Questionnaire at 5, attached as Exhibit E). The fifth page of those forms requests contact information for "Relatives,"— including a phone number. (*See id.*). The tenth page of those forms requests an "Emergency Contact" person and contact information. (*See id.* at 10). The agents were therefore seeking the

relatives' contact information in order to complete the booking and the question was not likely to be incriminating.[6] Accordingly, these questions fall within the pedigree exception to *Miranda*.

Second, even assuming there was a *Miranda* violation, suppression of any physical evidence stemming from that violation is not a remedy. "The exclusion of unwarned statements . . . is a complete and sufficient remedy for any perceived Miranda violation." *United States v. Patane,* 542 U.S. 630, 641–42 (2004) (internal citation and quotation marks omitted). Thus, "the exclusionary rule articulated in cases such as *Wong Sun* does not apply." *Id.* at 637. Consequently, the only remedy that Raji would hypothetically be entitled to would be to the suppression of any statement he made in response to the agent's pedigree questions under the Fifth Amendment. To the extent that the defendant is arguing that the interaction with the agents during his booking justifies suppression of the Raji Cellphones, that argument is foreclosed. *See United States v. McCoy*, 407 F. App'x 514, 516 (2d Cir. 2010) (reversing a district court's suppression of a firearm and ammunition found as a result an unwarned statement by the defendant, citing *Patane*).

## III. AN EVIDENTIARY HEARING IS NOT WARRANTED

The defendant has raised no relevant contested issue of fact that would require an evidentiary hearing. His request for a hearing should therefore also be denied.

### A. Applicable Law

A suppression hearing is required only if the defendant presents moving papers that are sufficiently definite, specific, detailed, and nonconjectural as to indicate relevant contested issues of fact. *United States v. Ciriaco*, 121 F. App'x 907, 909 (2d Cir. 2005); *see also United States v.*

---

[6] The defendant identified his brother, Dauda Raji, as a relative. As noted above, some of the fraud proceeds were sent to a company associated with Dauda Raji. However, the fact of the familial relationship is not incriminating. In any event, the Government does not intend to use the defendant's responses to the pedigree questionnaire in its case-in-chief.

13

*Barrios*, 210 F.3d 355, 2000 WL 419940, *1 (2d Cir. 2000) (defendant moving for the suppression of evidence "is not automatically entitled to a suppression hearing unless he supports his motion with moving papers [that] are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact ... are in question, including an affidavit of someone alleging personal knowledge of the relevant facts") (internal citations and quotation marks omitted); *United States v. Nelson*, 335 F. Supp. 2d 477, 479 (S.D.N.Y. 2004) (defendant "not entitled to an evidentiary hearing unless he offers an affidavit from an individual with personal knowledge of the relevant facts demonstrating that disputed issues of material fact exist").

### B. Discussion

As noted above, for purposes of this motion, the Government has assumed all of the facts asserted in the defendant's affidavit are true. Even on the facts set forth by the defendant, there is no basis for suppression of the Raji Cellphones. Moreover, although the defendant seeks an evidentiary hearing, and despite attaching the agent's account of the seizure of the Raji Cellphones to his motion (*see* Mulloy Aff.), the defendant points to no relevant contested issue of fact that must be resolved via an evidentiary hearing. The defendant's request should therefore be denied.

**CONCLUSION**

The defendant's motion should be denied.  Further, because there are no material disputes of fact which must be resolved for the Court to decide the motions, no evidentiary hearing is required.

Dated:  New York, New York
         January 29, 2021

             Respectfully submitted,

             AUDREY STRAUSS
             United States Attorney
             for the Southern District of New York

By:   *Dina McLeod*
    Dina McLeod
    Eun Young Choi
    Assistant United States Attorneys
    Tel.: (212) 637-1040 / -2187