UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
UNITED STATES OF AMERICA          :          19 Cr. 870 (JMF)

   - against -                                    :          <u>Reply in Support of Motion</u>
                                                   <u>to Suppress Evidence</u>
MUSTAPHA RAJI,                              :
              Defendant.                 :
------------------------------------------------------x

## INTRODUCTION

On January 15, 2021, defendant MUSTAPHA RAJI moved this Court to suppress two cellular telephones that were unlawfully seized from his home at the time of his arrest. The government filed its memorandum in opposition to Mr. Raji's motion (ECF Doc. 58, "Gov't Mem.") on January 29, 2021. This memorandum is respectfully submitted in reply to the government's opposition, and in further support of Mr. Raji's motion to suppress.

## ARGUMENT

The government asserts that (1) Mr. Raji's cell phones were lawfully seized pursuant to the plain view doctrine; (2) that the subsequent unlocking of Mr. Raji's cellphones does not warrant suppression; and (3) that a suppression hearing is not warranted because Mr. Raji has not articulated any disputable issues of fact. (Gov't Mem. at 1). For the reasons discussed herein, it is respectfully submitted that Mr. Raji's motion to suppress should be granted.

1. **The Plain View Doctrine Does Not Apply Because the Arresting Officers Lacked Probable Cause to Believe that the Cellphones Contained Evidence of the Offense**

The plain view doctrine is a recognized exception to the warrant requirement, authorizing warrantless seizures of an object where: (1) the police are lawfully in position from which they view an object; (2) the incriminating nature of the object is immediately apparent; and (3) the officers have a lawful right of access to the object, *United States v. Delva*, 858 F.3d 135 (2d Cir. 2017). Furthermore, "[s]eizure of everyday objects in plain view is justified where the officers have probable cause to believe that the objects contain or constitute evidence." *United States v. Babilonia*, 854 F.3d 163, 180 (2d Cir. 2017). However, the plain view doctrine is not applicable under the present circumstances.

Mr. Raji does not dispute that the arresting agents lawfully entered his home or that the seized cellphones were in plain view. However, Mr. Raji submits that the plain view doctrine cannot justify the warrantless search of his cellphones because the incriminating nature of the phones was not readily apparent to law enforcement, and the arresting agents lacked probable cause to believe that the cellphones constituted or contained evidence of criminal activity.

The government argues:

> The seizing agents observed the Raji Cellphones in plain view and had probable cause to believe that they contained evidence of the defendant's criminal activity, particularly given evidence that the defendant used at least one cellphone in furtherance of the fraud scheme."

(Gov't Mem. at 6). The government then cites to a prior location monitoring warrant that was obtained for one of the two cellphones, the "5485 phone," which alleges that Mr. Raji used the 5485 phone to speak with a bank investigator in October and November of 2019 (*See* Affidavit of Special Agent Vincent Lai ("Lai Aff."), attached as Exhibit C to the government's memorandum).

Specifically, the Lai Affidavit states that on or about October 24, 2019, an investigator from "Bank-1" called Mr. Raji at the number for the Target Cellphone (the 5485 phone) to inquire "about a transfer of funds"; that on or about October 30, 2019, Mr. Raji called an investigator at Bank-1 using the Target Cellphone and asked Bank-1 "to remove a hold on one of [Mr. Raji's] accounts;" and that on or about November 15, 2019, Mr. Raji "called an investigator at Bank-1 from the number for the Target Cellphone to inform Bank-1 that certain funds would be deposited into Mr. Raji's accounts within the next week." (Gov't Mem. at 8, citing Lai Aff. ¶9).

The government further states that, given the nature of the charges, "it was reasonable to believe that these phone calls to the bank were in furtherance of the defendant's criminal activity," and further, that the phone calls to the bank gave law enforcement, at the time of Mr. Raji's arrest, "reason to believe, at a minimum, that defendant had recently used a cellphone to facility his criminal activity." (Gov't Mem. at 8).

However, reliance on the Lai Affidavit is both misplaced and misleading. The government's conclusions are mere speculation, as there are no facts alleged in the

3

Lai Affidavit that give reason to believe that Mr. Raji used the phones in furtherance of criminal activity. In *United States v. Kidd*, a case cited by the government, the court concluded there was probable cause to seize a cellphone in plain view where a prior location monitoring warrant established that the defendant, who was charged with commercial sex act exploitation of minors, "(1) listed a cellphone number on online advertisements; (2) spoke with a minor victim who called that number; (3) took photographs of the minor victims; and (4) posted those photographs online." 386 F. Supp. 3d 364, 372-73 (S.D.N.Y. 2019).

Unlike the *Kidd* location monitoring warrant, which alleged the defendant's specific, incriminating conduct that clearly related to the crime, the Lai Affidavit does not state which of Mr. Raji's different accounts is being discussed; whether that specific account is somehow related to the specific criminal conduct; whether any activity, by either Mr. Raji or the bank, occurred after these phone calls, to indicate criminal activity; what the hold on Mr. Raji's bank account was for; or describe the transfer of funds that were allegedly discussed between Mr. Raji and the bank investigator. Nothing in the affidavit indicates that the phone calls relate to the offense conduct, or any criminal activity whatsoever. While the government, at page 8, relies on the defendant's "recent" use of his phone to facilitate criminal activity as a basis for probable cause, not surprisingly, the government fails to mention that the last phone call of November 15, 2019, occurred over one (1) month prior to the execution of the defendant's arrest in his home, thereby diluting the reliability and relevance of that "stale" information in the calculation of probable

4

cause. Furthermore, the conversations between Mr. Raji and the bank occurred more than one (1) year after the charged criminal activity, which is alleged to have taken place from July 2018 to September 2018, and over one (1) year after the arrest of Mr. Raji's alleged co-conspirator, Nancy Martino-Jean, which occurred in September 2018. The government's reliance on only a portion of an affidavit from a previous application (*See* Gov't Mem., at 9 – Ryan's Affidavit attached to Gov't Mem. As Ex. D) only serves to highlight the insufficient and inadequate information possessed by the agents at the time of the cell phones' seizure from Mr. Raji's home. The court properly authorized the Martino-Jean search warrant because the affidavit in support contained, not only generalized allegations, but specific, factual assertions indicating the device's use during and in furtherance of the criminal activity. Paragraph 14 of the Ryan Affidavit (which is relied upon by the Government at page 9) refers generally to the agent's training and experience and the use of electronic devices generally in the course of financial crimes. However, in contrast, paragraph 13 contains specific information learned during the course of the investigation that relates directly to the crimes charged and the evidentiary value of the devices.

      Paragraph 13 in pertinent part reads "…according to Martino-Jean, email communications from the Martino-Jean email account and WhatsApp messages related to the Fraudulent Wire Transfer are located on the Subject Device, In addition, based on emails obtained from Individual – 1, I know that Individual – 1

5

communicated with Martino-Jean via the Martino-Jean email account about the Fraudulent Oculina Wire."

This particularized and specific information is precisely what is required for probable cause, and conspicuously absent from the information relied upon by the agents and the government in Mr. Raji's case.

The government's reference to, and reliance on upon, the Martino-Jean warrant merely serves to underscore the fact that the agents did not have probable cause to seize Mr. Raji's phone, because had they possessed sufficient information to support probable cause, they would have sought (and in all likelihood obtained) a warrant for the phones prior to Mr. Raji's arrest. Therefore, it is submitted that neither the location monitoring warrant nor any other information gave the arresting agents probable cause to believe that the cellphones contained evidence of the offense or were used in furtherance of criminal activity.

Generalized statements or past experience alone cannot act as a substitute for articulable facts relevant to the individual defendant, the specific crime or the identifiable property seized.

Should the court accept the government's motion of probable cause, then any agent who is investigating virtually any crime can seize any cell phone at any time.

As the court stated in *Babilonia* at page 180:

> Research suggests that the virtually every adult in the United States owns a cell phone, "which {is} now such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude [it was] an important feature of human anatomy." *Riley v. California*, - U.S. -, 134 S.Ct 2473, 2484, 189 L.Ed.2d 430 (2014); *see generally Mobile Phone Ownership*, Pew Research Center (January 11, 2017),

6

http://www.pewinternet.org/chart/mobile-phone-ownership/. As Key notes, it is increasingly common for individuals to own more than one mobile phone: an employer might require a separate device for security reasons, an individual might decide to upgrade to a newer model, or a parent might purchase a phone for a child. As a result, we are mindful that the presence alone of a cell phone, or even several cell phones, in a home is not inherently incriminating.

**2.     The Possible Need for an Evidentiary Hearing**

The seizure of Mr. Raji's cellphones was a violation of the 4th Amendment and was illegal, thereby making any conversations with the defendant, related to those phones, improper and inadmissible as the "fruit of the poisonous tree."

While the defendant does not concede that he "consented" to the unlocking of his phone, and maintains that there are material factual discrepancies between the agent and the defendant, given the government's representation that for purposes of this motion they have assumed all of the defendant's facts are true (*See* Gov't Mem., at 14), and that they do not intend to offer on their case in chief, (1) the information retrieved from the phone (*See* Gov't Mem. at 11); (2)  any of the defendant's responses to the agent's pedigree questions, or (3) the fact that he unlocked Mr. Raji's phone (*See* Gov't Mem. at 12), the need for a hearing appears to be moot.

However, should the government contest any of the defendant's material facts, or if the Court believes that a hearing is necessary to resolve any of the legal issues, the defendant is prepared, and in fact eager, to participate in any hearing.

## **CONCLUSION**

For all of the reasons stated herein, as well as the reasons contained in his initial motion, Mr. Raji respectfully request that this Court grant this motion to suppress the phones that were unlawfully seized from his home.

Dated:	New York, New York
	February 12, 2021

/ s /
_____
JEREMY SCHNEIDER
Rothman, Schneider,
	Soloway & Stern, LLP
100 Lafayette Street, Ste. 501
New York, New York 10013
(212) 571-5500