UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
UNITED STATES OF AMERICA            :            19 Cr. 870 (JMF)

      - against -                   :

MUSTAPHA RAJI,                      :

                    Defendant.      :
-------------------------------------------------------x


### DEFENDANT MUSTAPHA RAJI'S
### MOTION *IN LIMINE*


JEREMY SCHNEIDER
Rothman, Schneider,
        Soloway & Stern, LLP
*Attorney for MUSTAPHA RAJI*
 100 Lafayette Street, Ste 501
New York, New York 10013
(212) 571-5500

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | 19 Cr. 870 (JMF) |
| - against - | : | Defendant's Motion *In Limine* |
| MUSTAPHA RAJI, | : | |
| Defendant. | : | |

-------------------------------------------------------x

## **INTRODUCTION**

On August 30, 2022, the Government provided a second revised letter listing uncharged prior acts of the defendant that it intends to introduce at trial under Rule 404(b) of the Federal Rules of Evidence for the purpose of showing intent, knowledge or lack of mistake in relation to the charged conspiracy, or as direct proof of the defendant's intent to defraud.  Mr. Raji moves the Court to preclude the following acts listed in the government letter:

1.  On or about April 27, 2017, a victim of an email compromise sent $1,975,213.93 to Best Janitor Cleaning Services LLC (a SunTrust Bank account). On or about the same day, the Best Janitor Cleaning Services bank account then sent a $56,500 check to Emergent Development Corporation's account at Regions Bank ("Emergent Regions Account"), Emergent Development Corporation being a company registered to the defendant. Also on April 27, 2017, $10,000 cash was deposited into the Emergent Regions Account. On or about May 1, 2017, the Emergent Regions Account sent $5,000 to Mustapha Raji. On or about May 2, 2017, the Emergent Regions Account sent $11,000 to Emergent Development Corporation's TD Bank account.  On or about May 19, 2017, the Emergent Regions Account sent $8,020 to Mustapha Raji.

2.  On or about July 17, 2017, a wire transfer constituting fraudulently obtained funds was sent to a bank account held in the name of Johnson Consumer Solutions LLC.  The Johnson Consumer Solutions bank account then sent a wire transfer in the amount of $4,815 to Emergent Development Corporation. On or about December 8, 2017, a wire transfer was sent from a Company based in Memphis, Tennessee ("Memphis Company-1") to Johnson Consumer Solutions LLC.  That wire was sent from the president of Memphis Company-1.  The owner of Johnson Consumer Solutions stated, in sum and substance, that he provided his bank account information to the defendant and the defendant had told him that money would be coming into the Johnson Consumer Solutions bank account.

1

3. In or about May 2018, an email account belonging to the Chief Financial Officer ("CFO") of a hospital in Missouri was compromised. In or about that same month, four emails were sent from the CFO's email account which purported to give authorization to pay four fraudulent invoices – three of which identified the company to be paid as "Emergent Development Corporation." The fraudulent wire transfers related to those three invoices were sent to a Citibank account held in the name of Emergent Development Corporation and as to which the defendant is the sole signatory.

4. In or about 2017, a co-conspirator ("CC-1") contacted a cooperating witness ("CW-1") and told CW-1 that the defendant had received fraud proceeds in a bank account that the defendant controlled with TD Bank in Canada.  CC-1 complained that the defendant had not sent the money where he was supposed to and that the defendant was not picking up or returning CC-1's calls.  CC-1 asked CW-1 to reach out to the defendant and encourage him to contact CC-1. When CW-1 contacted the defendant, the defendant told CW-1, in sum and substance, that what CC-1 was asking for was not tenable. The defendant also told CW-1 he would reach out to CC-1 and speak with CC-1 about the matter.

5. In or about the spring of 2018, CW-1 asked CC-1 whether CC-1 knew someone who could provide an account to receive fraudulent funds. CC-1 responded that the defendant could provide such an account, and CC-1 reached out to the defendant. The defendant sent the account information for a Wells Fargo bank account to CC-1, who forwarded the information to CW-1.  CW-1 provided the account information to another co-conspirator, who arranged a fraudulent wire transfer of approximately $100,000 to be sent to the account. When fraud proceeds arrived in the account, the defendant told CC-1 that they should not move the money out right away because it would look too suspicious. Approximately a few days later, the defendant told CC-1 that the account holder was arrested.  Subsequently, CC-1, CW-1, the defendant and other co-conspirators had a conference call to discuss the situation. On that call, the defendant was very angry and told his co-conspirators that the account owner was arrested and that he was upset that the co-conspirators were asking for money after the account owner was arrested. The defendant emphasized that this was a small amount of money to him, as he usually did transactions in much larger amounts of fraud proceeds and had companies in which to hide those proceeds. CW-1 subsequently went back and forth with the defendant a few times about trying to get money out of the account.

6. Between in or about May 2019 and in or about October 2019, the defendant engaged with CW-1 in discussions to plan the receipt and laundering of approximately 2.3 million in fraudulent funds.

7. The defendant and Emergent Development Corporation have not filed federal tax returns or otherwise reported any income or expenses to the Internal Revenue Service for the tax years 2017 and 2018, and Unique Bamboo Investment, Inc. has not filed a federal tax

2

return or otherwise reported any income or expenses to the Internal Revenue Service for the tax year 2018.

## ARGUMENT

Under the Federal Rules of Evidence, evidence may be admitted at trial, subject to the balancing test under Rule 403, only if it has "any tendency to make the existence of a fact" that is of consequence to the determination of the action "more or less probable than it would be without the evidence." Fed. R. Evid. 401. Under Rule 404(a), "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Furthermore, under Rule 404(b), "evidence of defendant's prior crimes, wrongs, or other acts cannot be used to prove that a defendant was a bad fellow and most likely remains one-that he has a criminal nature or propensity and the acts in question are consistent with his nature or tendency towards crime." *United States v. Siddiqui*, 699 F.3d 690, 702 (2d Cir. 2012); *See also Huddleston v. United States*, 485 U.S. 681, 685 (1988).

In *Huddleston v. United States*, the Supreme Court set forth the test for the admissibility of Rule 404(b) evidence. "Under Huddleston, '[t]o determine whether a district court properly admitted other act evidence, the reviewing court considers whether (1) it was offered for a proper purpose; (2) it was relevant to a material issue in dispute; (3) its probative value is substantially outweighed by its prejudicial effect; and (4) the trial court gave an appropriate limiting instruction to the jury if so requested by the defendant.'" *United States v. Scott*, 677 F.3d 72, 79 (2d Cir. 2012) (quoting *United States* v. *LaFlam*, 369 F.3d 153, 156 (2d Cir. 2004)). When evidence is not directly admissible, it may be admissible as "other acts" evidence under Rule 404(b) only if it constitutes "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b).

Moreover, evidence offered for a proper purpose is nonetheless inadmissible where its probative value is substantially outweighed by unfair prejudice under Rule 403. Evidence is unfairly prejudicial "when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission in to evidence." *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980).

In this case, the government intends to offer the above first six acts pursuant to Rule 404(b) to show intent, knowledge, absence of mistake, or lack of accident. It intends to offer the seventh act as direct proof of Mr. Raji's intent to defraud, or, in the alternative, as probative of the defendant's intent, plan, knowledge, and absence of mistake or accident under Rule 404(b).

Applying the Huddleston test, the Court should preclude the admission of the seven uncharged acts. This "classic" propensity evidence should be precluded because any probative value is substantially outweighed by the unfair prejudice it would cause to Mr. Raji. *See United States v. McCallum*, 584 F.3d 471, 477 (2d Cir. 2009) (prior drug convictions were "propensity evidence in sheep's clothing" and prejudicial to the defendant). Evidence that the defendant in a

criminal case has committed other crimes is highly prejudicial, especially when the other crime is similar to that for which the defendant is on trial. *Old Chief v. United States*, 519 U.S. 172, 185, 117 S. Ct. 644, 653 (1997) ("Where a prior conviction was for a gun crime or one similar to other charges in a pending case the risk of unfair prejudice would be especially obvious."); *United States v. Puco*, 453 F.2d 539, 542 (2d Cir. 1971) ("The potential for prejudice, moreover, is greatly enhanced where, as here, the prior offense is similar to the one for which the defendant is on trial.").

The evidence set forth in uncharged acts 1 through 6 are virtually identical to the crimes for which Mr. Raji will be tried.  Acts 1 through 3 involve the alleged transfer of fraudulently obtained funds derived from an email compromise scheme into a bank account that is purported to be controlled by Mr. Raji.  This mirrors the precise wire fraud scheme that Mr. Raji is charged with in this case.  Furthermore, Acts 4 through 6 involve Mr. Raji's involvement, including discussions with co-conspirators, regarding the distribution or laundering of fraudulently obtained proceeds into bank accounts purported to be controlled by Mr. Raji, or accounts that he has access to, which are again acts that are practically identical to the charges in this case. Unfortunately, such obvious propensity evidence would undoubtedly lead a jury to conclude that if Mr. Raji had committed these identical prior acts, then he must have committed the crimes for which he is charged. No limiting instruction would cure this unduly prejudicial effect.

The same can be said for act 7, which alleges that Mr. Raji did not pay taxes or report business income or expenses.  Again, whatever minimal probative value such evidence has, it is unduly prejudicial propensity evidence that would lead a jury to associate Mr. Raji's bad moral character with guilt in this case.

Additionally, presenting evidence of these seven additional uncharged acts will only confuse the jury and create seven mini-trials within the trial, causing unnecessary delay. *See e.g. United States v. Aboumoussallem*, 726 F.2d 906, 912 (2d Cir. 1984) (affirming district court's preclusion of 404(b) evidence where the adverse consequences of jury confusion and trial delay outweighed the benefits of the evidence). In this case, the government will have to prove that Mr. Raji committed each of the seven acts, and Mr. Raji in turn will have to defend himself against each allegation.  Thus, even though Mr. Raji is only charged with four offenses, admitting these seven additional uncharged crimes and additional victims will only confuse the jury as it tries to sift through and evaluate the evidence with respect to the charged crimes.  No limiting instruction can cure this unduly prejudicial effect. Finally, the admission into evidence of seven additional acts will unduly extend the length of the trial by several days, creating unnecessary delay, which should outweigh any minimal probative value the evidence may offer. *See* Fed. R. Evid. 403; *see e.g. United States v. Stein*, 521 F. Supp. 2d 266, 273 (S.D.N.Y. 2007).

## **CONCLUSION**

Accordingly, because the seven uncharged acts which the government seeks to admit at trial are more unduly prejudicial than probative, would cause confusion to the jury, and unnecessarily delay the length of the trial, such evidence should be precluded.


Dated:  New York, New York
August 31, 2022


Respectfully submitted,
_____/s/_____
Jeremy Schneider
Rothman, Schneider,
Soloway & Stern, LLP
*Attorney for MUSTAPHA RAJI*
100 Lafayette Street, Ste 501
New York, New York 10013
(212) 571-5500