UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------x
                                              :

UNITED STATES OF AMERICA        :

                                              :

               - *v.* -             :               19 Cr. 870 (JMF)

                                              :

MUSTAPHA RAJI,                :

                                            :

                   Defendant.       :

                                            :

-----------------------------------------------------x

## THE GOVERNMENT'S OPPOSITION TO THE DEFENDANT'S MOTIONS *IN LIMINE*

DAMIAN WILLIAMS
United States Attorney
Southern District of New York

Catherine E. Ghosh
Jilan J. Kamal
Robert B. Sobelman
Assistant United States Attorneys
     *Of Counsel*

i

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT ........................................................................................................................... 1

I.     The Court Should Admit Evidence of the Defendant's Involvement in Laundering Fraud
       Proceeds for Two Other Business Email Compromise Schemes......................................... 1

       A.  Factual Background……………….….………………………………………..…2

              1. The Charged Scheme………………………….…………………….…...2
              2. The University Scheme………………………….………………………..2
              3. The Hospital Scheme……………………….…………………………….3

       B. Applicable Law………………………….………………………………………....4
       C. Discussion……………….…………………………………………………………5

II.    The Court Should Admit Evidence of the Defendant's Communications with CW-1
       Regarding Attempts to Launder Fraud Proceeds That Occurred Before and After the
       Charged Offenses. ........................................................................................................ 8

       A. Factual Background……………………………………..…………………...………9
       B. Applicable Law………………………….……………………..…………………11
              1. Evidence Admissible as Intrinsic or Direct Proof
              2. Evidence Admissible Pursuant to Rule 404(b)……………………………12
       C. Discussion…………..…………………………….………………………………12

III.   The Court Should Admit Evidence of the Defendant's and His Corporate Entities' Failure
       to File Income Tax Returns or Disclose Income to the IRS............................................ 16

CONCLUSION................................................................................................................... 19

# TABLE OF AUTHORITIES

## CASES

*Costantino v. Herzog*, 203 F.3d 164 (2d Cir. 2000) ...................................................................... 5

*United States v. Adelekan*, No. 19 Cr. 291, Dkt. No. 393 (LAP) (S.D.N.Y. Oct. 22, 2021) ........ 17

*United States v. Aminy*, 15 F.3d 258 (2d Cir. 1994) ………………………………………………14

*United States v. Avenatti*, No. 19 Cr. 374, Dkt. No. 288 (JMF) (S.D.N.Y. Jan. 13, 2022)……...18

*United States v. Barbera*, No. 21 Cr. 154 (JGK), 2022 WL 3157116 (S.D.N.Y. Aug. 5, 2022) . 18

*United States v. Barrentine*, 591 F.2d 1069 (5th Cir. 1979) ......................................................... 15

*United States v. Basciano*, No. 03 Cr. 929 (NGG), 2006 WL 385325 (E.D.N.Y. Feb. 17, 2006).
........................................................................................................................................................ 15

*United States v. Bergstein*, 788 F. App'x 742 (2d Cir. 2019)………………………….……...16

*United States v. Brady*, 26 F.3d 282 (2d Cir. 1994)....................................................................... 5

*United States v. Carboni*, 204 F.3d 39 (2d Cir. 2000) .......................................................... 11, 12

*United States v. Chen Xiang*, No. S1 02 Cr. 271 (RCC), 2003 WL 21180400 (S.D.N.Y. May 20,
2003) ………………………………………………………………………….......……7

*United States v. Colon*, 880 F.2d 650 (2d Cir. 1989)..................................................................... 4

*United States v. Coonan*, 938 F.2d 1553, 1561 (2d Cir. 1991).................................................... 11

*United States v. Figueroa*, 618 F.2d 934 (2d Cir. 1980) ............................................................. 15

*United States v. Flom*, 256 F. Supp. 3d 253 (E.D.N.Y. 2017)..................................................... 13

*United States v. Gonzalez*, 110 F.3d 936 (2d Cir. 1997) ............................................................. 11

*United States v. Inserra*, 34 F.3d 83, 89 (2d Cir. 1994)............................................................... 11

*United States v. Kurland*, No. S1 20 Cr. 306 (NGG), 2022 WL 2669897 (E.D.N.Y. July 11,
2022)………………………………………………………………………………….17

*United States v. Mercado*, 573 F.3d 138 (2d Cir. 2009)............................................................. 12

*United States v. Meyerson*, 18 F.3d 153 (2d Cir. 1994)........................................................... 4, 6

*United States v. Nektalov*, 325 F. Supp. 2d 367 (S.D.N.Y. 2004) .......................................... 8, 14

*United States v. Olivieri*, 740 F. Supp. 2d 414 (S.D.N.Y. 2010)................................................. 13

*United States v. Osarenkhoe*, 439 F. App'x 66 (2d Cir. 2011).............................................. 18, 19

*United States v. Pascarella*, 84 F.3d 61 (2d Cir. 1996) .............................................................. 12

*United States v. Paulino*, 445 F.3d 211 (2d Cir. 2006)............................................................. 4, 5

*United States v. Pipola*, 83 F.3d 556 (2d Cir. 1996) ............................................. 5, 12

*United States v. Ramirez*, 894 F.2d 565 (2d Cir. 1990) ........................................... 5, 14

*United States v. Ramirez-Amaya*, 812 F.2d 813 (2d Cir. 1987) ………….…... ……………. ……...7

*United States v. Roldan-Zapata*, 916 F.2d 795 (2d Cir. 1990) ................................. 5, 8

*United States v. Rosa*, 11 F.3d 315 (2d Cir. 1993) ...................................................... 5

*United States v. Shah*, S4 19 Cr. 833 (SHS) (S.D.N.Y. May 25, 2022) ..................... 18

*United States v. Shea*, S2 20 Cr. 412, Dkt. No. 214 (AT) (S.D.N.Y. May 6, 2022) ............... 17-18

*United States v. Thomas*, 54 F.3d 73 (2d Cir. 1993) ..................................................... 4

*United States v. Valenti*, 60 F.3d 941 (2d Cir. 1995) ........................................... 17, 19

*United States v. Williams*, 205 F.3d 23 (2d Cir. 2000) ...................................... 5, 8, 12

*United States v. Zackson*, 12 F.3d 1178 (2d Cir. 1993) ......................................... 4, 5

**RULES**

Fed. R. Evid. 403 ......................................................................................... *passim*
Fed. R. Evid. 404(b) ................................................................................... *passim*

**OTHER AUTHORITIES**

Weinstein's Fed. Evid., § 404.20 ...................................................................... 11

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to the defendant's motions *in limine*.  (Dkt. No. 92 ("Mot.").)  For the reasons set forth below, the Court should deny the defendant's motions in their entirety and admit (i) evidence of the defendant's involvement in laundering fraud proceeds for two other business email compromise schemes; (ii) evidence of the defendant's communications with CW-1 regarding attempts to launder fraud proceeds that occurred before and after the charged offenses; and (iii) evidence of the defendant's and his corporate entities' failure to file income tax returns or disclose income to the Internal Revenue Service ("IRS").[1]

## ARGUMENT

### I.   The Court Should Admit Evidence of the Defendant's Involvement in Laundering Fraud Proceeds for Two Other Business Email Compromise Schemes.

The Government intends to offer limited evidence at trial of the defendant's involvement in laundering fraud proceeds for two business email compromise schemes, in addition to the scheme charged in the Indictment, pursuant to Rule 404(b), as proof of the defendant's intent, plan, knowledge, absence of mistake, and lack of accident.  Contrary to the defendant's conclusory assertions, this is an entirely proper use of Rule 404(b) evidence, and the defendant's motion to preclude this evidence should be denied.

---

[1] In an effort to streamline the presentation of evidence at trial, the Government does not presently intend to offer evidence in its case-in-chief regarding the second item that the defendant moved to preclude, which related to the defendant's receipt, in July 2017, of the proceeds from a fraud targeting a company based in Memphis, Tennessee.

## A.  Factual Background

### 1.  The Charged Scheme

In July 2018, a hedge fund in Manhattan ("Victim Company-1") fell victim to a business email compromise scheme that tricked Victim Company-1 into diverting a $1,700,000 payment to one of Victim Company-1's founders to a different bank account, held by Unique Bamboo Investment, Inc. (of which the defendant was Vice-President during the charged conduct), an entity with which Victim Company-1 had no relationship.  The defendant was the member of the fraud and money laundering scheme who directed his co-conspirators to have the fraud proceeds diverted to that particular account, which he controlled.  Within a week, the Unique Bamboo Investment, Inc. bank account sent $50,000 to the defendant.  Shortly thereafter, the defendant wired approximately half of the $50,000 to co-conspirators and withdrew approximately the other half of the money.[2]

### 2.  The University Scheme

In April 2017, a public university in Oregon (the "University") fell victim to a business email compromise scheme that tricked the University into diverting a $1,975,213.93 payment to a vendor to a different bank account, held by Best Janitor Cleaning Services LLC, an entity with which the University had no relationship.  That same day, the Best Janitor Cleaning Services LLC bank account sent a $56,500 check to a bank account held in the name of Emergent Development Corporation at Regions Bank (the "EDC Regions Account"), and $10,000 in cash was also deposited into the same bank account held by Emergent Development Corporation.  The defendant

---

[2] The Government provided a detailed overview of certain of the facts that the Government anticipates it will establish at trial in a memorandum and an affidavit filed in opposition to the defendant's motion to suppress, as well as in a Complaint charging one of the defendant's co-conspirators, each of which is incorporated by reference.  (Dkt. Nos. 58 at 1-4, 58-1 at 3-6, 58-2 at 1-2.)

was the President of Emergent Development Corporation at that time.  A few days later, the defendant sent approximately $5,000 from the EDC Regions Account to his own personal bank account and, the following day, the defendant transferred approximately $11,000 from the EDC Regions Account to an account at TD Bank also held by Emergent Development Corporation (the "EDC TD Account").  Approximately two weeks after those transfers, the defendant sent another $8,020 from the EDC Regions Account to his personal bank account.

The Government anticipates that the evidence concerning the University Scheme will take less than an hour to present.  The Government presently intends to offer a small number of emails and financial records, as well as one chart tracing the flow of funds from the victim to the defendant, and to call to testify just one employee of the University to offer brief testimony.

### 3.  The Hospital Scheme

In May 2018, a hospital system in Missouri (the "Hospital") fell victim to a business email compromise scheme.  As part of that scheme, three unauthorized emails were sent from the email account for the Hospital's Chief Financial Officer that purported to direct that payments be issued for false invoices issued by Emergent Development Corporation, of which the defendant was the President during the relevant time period.   These unauthorized emails and false invoices fraudulently induced the Hospital to send approximately $250,000 to a bank account with Citibank held in the name of Emergent Development Corporation (the "EDC Citibank Account"), for which the defendant was the sole signatory.  Within days, the defendant transferred virtually all of the funds out of the EDC Citibank Account, including approximately $20,000 to his personal bank account, approximately $2,500 to pay his rent, and approximately $100,000 to a company controlled by Dauda Raji, his brother (who, the evidence at trial will show, was also a co-conspirator in the charged offenses).  The defendant also withdrew approximately $8,000 in cash.

The Government anticipates that the evidence concerning the Hospital Scheme will take less than an hour to present. The Government presently intends to offer a small number of emails and financial records, as well as one chart tracing the flow of funds from the victim to the defendant, and to call to testify just one employee of the Hospital to offer brief testimony.

## B. Applicable Law

Rule 404(b) allows for the admission of uncharged crimes, wrongs, or other acts for purposes other than proving criminal propensity, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). The Second Circuit "has long adopted an 'inclusionary' approach to the admission of uncharged crime evidence, under which evidence of prior crimes, wrongs, or acts is admissible for any purpose other than to show a defendant's criminal propensity." *United States v. Paulino*, 445 F.3d 211, 221 (2d Cir. 2006) (internal quotation marks omitted). Applying this approach, the Second Circuit has routinely approved of the admission of "other acts" evidence with respect to the issues of knowledge, intent, and/or motive. *See, e.g.*, *United States v. Thomas*, 54 F.3d 73, 81-82 (2d Cir. 1993); *United States v. Meyerson*, 18 F.3d 153, 166-67 (2d Cir. 1994). Where the defendant claims his conduct has an innocent explanation, the admission of such evidence of prior acts is particularly appropriate. *See, e.g.*, *United States v. Zackson*, 12 F.3d 1178, 1182 (2d Cir. 1993) ("Where a defendant claims that his conduct has an innocent explanation, prior act evidence is generally admissible to prove that the defendant acted with the state of mind necessary to commit the offense charged.").

The defendant's knowledge and intent are in issue unless the defendant has unequivocally conceded that element of the offenses with which he is charged. *See, e.g.*, *United States v. Colon*, 880 F.2d 650, 656-57 (2d Cir. 1989); *see also United States v. Ramirez*, 894 F.2d 565, 568 (2d Cir.

1990) (when the defendant "disavows awareness that a crime was being perpetrated" and the Government bears the burden of proving knowledge "as an element of the crime, knowledge is properly put in issue").

The Court has broad latitude in determining whether to admit evidence pursuant to Rule 404(b).  *United States v. Brady*, 26 F.3d 282, 286 (2d Cir. 1994).  Where evidence is offered for a proper purpose under Rule 404(b), it may only be excluded if the probative value of the evidence is "substantially outweighed" by the danger of unfair prejudice.  *Zackson*, 12 F.3d at 1182.  While any evidence, including evidence offered pursuant to Rule 404(b), is subject to the balancing test set forth in Rule 403, the Second Circuit has long made clear that "other act" evidence that is neither "more sensational [n]or disturbing" than the charged crimes will not be deemed unfairly prejudicial.  *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990); *see also United States v. Williams*, 205 F.3d 23, 33-34 (2d Cir. 2000); *Paulino*, 445 F.3d at 223; *cf. Costantino v. Herzog*, 203 F.3d 164, 174 (2d Cir. 2000) ("Because virtually all evidence is prejudicial to one party or another, to justify exclusion under Rule 403 the prejudice must be *unfair*." (emphasis in original)).  Moreover, the Second Circuit has repeatedly held that evidence properly admissible under Rule 404(b) is not unduly prejudicial so long as the court gives a limiting instruction to the jury explaining the purpose for the evidence.  *See United States v. Pipola*, 83 F.3d 556, 566 (2d Cir. 1996); *United States v. Rosa*, 11 F.3d 315, 334 (2d Cir. 1993).

### C.  Discussion

*First*, evidence of the defendant's participation in receiving and laundering the proceeds of the University Scheme and the Hospital Scheme is admissible to prove the defendant's intent and knowledge with respect to the charged offenses.  By receiving, laundering, and profiting from fraudulent transactions using corporate entities he controlled at least twice during the

approximately one year prior to the charged offenses, the defendant became fully aware of the nature of the illegal business in which he was engaged.  Admission of this evidence is critical to permitting the Government, which has the burden of proof, to fairly respond to a defense that is anticipated to center around seeding doubt about the defendant's intent and knowledge regarding strikingly similar transactions that took place within approximately one year of the University Scheme and the Hospital Scheme.  *See Zackson*, 12 F.3d at 1182 ("Where a defendant claims that his conduct has an innocent explanation, prior act evidence is generally admissible to prove that the defendant acted with the state of mind necessary to commit the offense charged."); *cf. Meyerson*, 18 F.3d at 166-67 (evidence of defendant engaging in fraud and tax evasion on prior occasions was "clearly admissible" under Rule 404(b) where he "contended that he lacked the state of mind to cheat on his income taxes").

*Second*, evidence of the defendant's role in the University Scheme and the Hospital Scheme is admissible to show the defendant's plan, absence of mistake, and lack of accident with respect to the charged offenses.  The fact that the defendant played the same role as he did in the charged scheme in other, similar schemes, executed in the same way, powerfully demonstrates that the defendant knew precisely what he was doing and knowingly and intentionally engaged in the charged conduct.  In colloquial terms, this was not his first rodeo, and the Government should be permitted to put this evidence before the jury to respond to any potential suggestion that the charged conduct did not proceed according to the defendant's own plan, or that he somehow "accident[ally]" or "mistake[nly]" received and laundered fraud proceeds.  Fed. R. Evid. 404(b)(2). Similarly, to the extent the defendant may seek to distance himself from his co-conspirators or claim that they were acting with requisite knowledge and intent, but he was not, evidence of the University and Hospital Schemes should be admitted to place the charged conduct in the proper

context of the defendant's prior conduct, in order to permit the jury to adequately assess his knowledge and intent. *See, e.g.*, *United States v. Ramirez-Amaya*, 812 F.2d 813, 817 (2d Cir. 1987) ("[Defendant's] defense to the present charges against him was that, although he was a business associate of [co-defendant], he had had no intention of involving himself in unlawful activities. Proof that [defendant] had previously sought to engage in precisely such activities was admissible on the issue of his intent."). Put differently, keeping the defendant's prior experiences from the jury would only seek to artificially limit their understanding of the defendant's true knowledge and intent, potentially permitting the defendant to mislead them as to his true state of mind.

*Third*, the defendant's principal objection, that the defendant's participation in the University Scheme and the Hospital Scheme is "virtually identical" to the charged conduct, provides no basis to preclude this highly probative evidence. *See, e.g.*, *United States v. Chen Xiang*, No. S1 02 Cr. 271 (RCC), 2003 WL 21180400, at *3 (S.D.N.Y. May 20, 2003) (admitting evidence of uncharged acts under Rule 404(b) where "the nature of the charged and uncharged crimes is remarkably similar" because "the proffered evidence does not involve conduct that is any more inflammatory than the charged offenses"). Indeed, the fact that "the charged and uncharged crimes are largely identical in plan and execution" renders the evidence highly probative of the defendant's state of mind, *id.*, outweighing any potential *unfair* prejudice.

Indeed, there is no basis to preclude this evidence under Rule 403. The evidence is straightforward, non-sensational, and highly probative of the defendant's intent, plan, knowledge, absence of mistake, and lack of accident. The University scheme involved a loss amount comparable to the charged scheme (approximately $1.9 million and $1.7 million, respectively) and the Hospital scheme involved less money (approximately $250,000). In the charged scheme, as

well as the University and Hospital schemes, the victims are institutions (not individuals). There is no risk that this evidence will elicit a separate, heightened response from the jury that would prevent the jury's fair assessment of the evidence, even with a limiting instruction. *See, e.g.*, *Williams*, 205 F.3d at 34 (perceiving "no undue prejudice under Rule 403 [where] the evidence did not involve conduct more serious than the charged crime"); *Roldan-Zapata*, 916 F.2d at 804 (evidence not unfairly prejudicial because it "did not involve conduct any more sensational or disturbing than the crimes with which [the defendant] was charged"). In particular, "given that the prior transactions are similar to, and not particularly inflammatory in light of, the charged conduct there is little danger of unfair prejudice to the defendant." *United States v. Nektalov*, 325 F. Supp. 2d 367, 372 (S.D.N.Y. 2004).

In addition, the proffered evidence would not materially lengthen or complicate the trial. As explained above, the Government anticipates that the evidence regarding the University Scheme and the Hospital Scheme would consist principally of a small number of emails and financial records, two financial charts tracing the fraud proceeds from the victims to the defendant, and one witness per scheme to provide context for the emails and financial transactions.

## II.     The Court Should Admit Evidence of the Defendant's Communications with CW-1 Regarding Attempts to Launder Fraud Proceeds That Occurred Before and After the Charged Offenses.

The Government intends to adduce evidence at trial regarding the defendant's communications with CW-1 regarding attempts to launder fraud proceeds both before and after the charged offenses. Such evidence is admissible both as direct evidence of the charged offenses and, in the alternative, pursuant to Rule 404(b), as proof of the defendant's intent, plan, knowledge, absence of mistake, and lack of accident. It is also admissible to bolster the credibility of CW-1 in light of the defendant's anticipated attacks on CW-1's credibility in his opening statement and cross-examination. The defendant's motion to preclude this evidence should be denied.

### A.  Factual Background

The Government presently intends to call CW-1 to testify at trial and to offer as trial exhibits numerous communications between CW-1 and the defendant, among others.  CW-1, who has pled guilty to participating in the conduct charged in this case, first came into contact with the defendant in 2017, the year before the charged offenses.  At that time, a co-conspirator ("CC-1") contacted CW-1 and told CW-1 that the defendant had received fraud proceeds in a TD Bank account in Canada.  CC-1 complained that the defendant had not sent the fraud proceeds where he was supposed to and was not picking up or returning CC-1's calls.  CC-1 asked CW-1 to reach out to the defendant and encourage him to contact CC-1.  When CW-1 contacted the defendant, the defendant told CW-1, in substance, that what CC-1 was asking for what not tenable.  The defendant also told CW-1 that he would reach out to CC-1 and speak with CC-1 about the matter.

In or about the spring of 2018, shortly before the charged conduct, CW-1 asked CC-1 whether CC-1 knew someone who could provide a bank account to receive stolen funds.  CC-1 responded that the defendant could provide such an account, and CC-1 reached out to the defendant.  The defendant sent the account information for a Wells Fargo bank account to CC-1, who forwarded the information to CW-1.  CW-1 provided the account information to another co-conspirator, who arranged for a fraudulent wire transfer of approximately $100,000 to be sent to the account.  When the fraud proceeds arrived in the account, the defendant told CC-1 that they should not move the money out right away because it would look too suspicious.  The defendant later claimed that the money could not be moved out of the account at all.  The defendant emphasized that this was a small amount of money to him, as he usually did transactions in much larger amounts of fraud proceeds and had companies in which to hide those proceeds.  CW-1

subsequently went back and forth with the defendant about trying to get the money out of the account, but was ultimately unsuccessful.[3]

From the interactions between CW-1 and the defendant in the spring of 2018, CW-1 obtained the defendant's contact information and understood from the defendant's statements that he had the ability to receive and launder substantial proceeds of fraudulent schemes.  That series of interactions is what led CW-1 to reach out to the defendant to help facilitate the charged scheme and to ask the defendant to provide an account to which the proceeds of the charged scheme could be sent.  The defendant provided to CW-1 the bank account information that was used for the scheme and did, in fact, receive the $1.7 million fraudulent wire transfer central to the charged scheme.

After the defendant and CW-1 participated in the charged offenses, and CW-1 began cooperating with law enforcement, CW-1 continued to communicate with the defendant about potential participation in additional fraud and money laundering activity.  In particular, from May to October 2019, the defendant discussed with CW-1 the potential receipt and laundering of approximately $2.3 million in fraudulent funds, even after the defendant was aware that Nancy Martino-Jean—the defendant's co-conspirator, the President of Unique Bamboo Investment, Inc., and the signatory on the account into which the $1.7 million fraudulent transfer was made—had been arrested in connection with the conduct charged in this case.

_____

[3] The Government's Rule 404(b) notice also referenced CW-1's recollection regarding the arrest of an individual involved in this scheme.  (*See* Mot. 2 ¶ 5.)  After the Government provided the notice to the defendant on August 30, 2022, CW-1's recollection was refreshed by CW-1's review of WhatsApp messages from September 2018 between CW-1 and Dauda Raji, the defendant's brother and co-conspirator.  Upon reviewing those messages, CW-1 clarified that the arrest he previously recalled was of an individual known to the Government as Nancy Martino-Jean, and that the arrest occurred later in time than CW-1 had previously believed (*i.e.*, in or about September 2018, rather than in or about the spring of 2018).  Accordingly, the communications related to that arrest occurred during the charged offenses and will be offered as direct evidence.

### B. Applicable Law

#### 1. Evidence Admissible as Intrinsic or Direct Proof

Though the admissibility of uncharged acts evidence is generally governed by Rule 404(b), evidence of uncharged acts is admissible—without regard to Rule 404(b)—when it constitutes intrinsic or direct proof of the charged crimes. *See, e.g.*, *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000); *see also* Weinstein's Fed. Evid., § 404.20[2][b] (noting that evidence of other wrongs is admissible without regard to Rule 404(b) where those wrongs "[are] inextricably intertwined with the charged offense, when both acts are part of a single criminal episode, or when the other acts were necessary preliminaries to the crime charged"); *id.* § 404.20[2][c] (noting that evidence of other acts "is admitted if it contributes to an understanding of the event in question, even if it reveals crimes other than those charged, because exclusion under those circumstances would render the testimony incomplete and confusing"). Such evidence need not directly establish an element of the offense charged; it can be admitted "in order to provide background for the events involved in the indictment" such as "the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed." *United States v. Coonan*, 938 F.2d 1553, 1561 (2d Cir. 1991) (internal citation omitted). In particular, "evidence of other bad acts may be admitted to provide the jury with the complete story of the crimes charged by demonstrating the context of certain events relevant to the charged offense." *United States v. Inserra*, 34 F.3d 83, 89 (2d Cir. 1994); *see also United States v. Gonzalez*, 110 F.3d 936, 941 (2d Cir. 1997) ("To be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency. Relevant evidence is not confined to that which directly establishes an element of the crime.").

## 2.   Evidence Admissible Pursuant to Rule 404(b)

The Government respectfully incorporates by reference Part I.B, above, which sets forth the applicable law generally governing the admission of evidence pursuant to Rule 404(b).   In addition, evidence of uncharged acts is admissible as background evidence where it is used to (i) explain the development of the illegal relationship between co-conspirators; (ii) explain the mutual criminal trust that existed between co-conspirators; and/or (iii) complete the story of the crime charged.   *See United States v. Mercado*, 573 F.3d 138, 141-42 (2d Cir. 2009); *Williams*, 205 F.3d at 33-34 (affirming admission of prior act evidence involving co-conspirators "to inform the jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between the participants in the crime developed" (internal quotation marks omitted)); *United States v. Pascarella*, 84 F.3d 61, 73 (2d Cir. 1996) (other act evidence admissible "to show the background of a conspiracy or the development of a relationship of trust between the participants"); *Pipola*, 83 F.3d at 566 ("One legitimate purpose for presenting evidence of extrinsic acts is to explain how a criminal relationship developed; this sort of proof furnishes admissible background information in a conspiracy case.").

### C.  Discussion

*First*, the defendant's communications with CW-1 regarding attempts to launder fraud proceeds both before and after the charged offenses, is admissible as direct evidence because it is, at least in large part, "inextricably intertwined with the evidence regarding the charged offense," "necessary to complete the story of the crime on trial," *Carboni*, 204 F.3d at 44 (internal quotation marks omitted), and important background evidence to show the development and nature of the relationship between CW-1 and the defendant, *see, e.g.*, *United States v. Olivieri*, 740 F. Supp. 2d

414, 422 (S.D.N.Y. 2010) ("It is well established in the Second Circuit that uncharged evidence of other acts is admissible to show the background of a conspiracy or a relationship of trust."). CW-1's first interactions with the defendant in 2017 are important evidence to provide context for the types of matters about which they have interacted, which have all related to committing fraud and laundering the proceeds.  Similarly, CW-1's dealings with the defendant in a prior scheme in the spring of 2018, just prior to the charged offenses, are critical to explaining why and how CW-1 contacted the defendant for assistance with the execution of the charged fraud and money laundering scheme, as well as the defendant's knowledge of the nature and object of the scheme. In addition, CW-1's discussions in 2019 with the defendant, in which the defendant expresses willingness to help defraud a victim of $2.3 million and launder those funds, provide critical context for CW-1's prior interactions with the defendant and inform the meaning of certain phrases and actions taken during the charged conduct.  Without providing these details of CW-1's interactions with the defendant, the jury would be left considering the middle chapter of a book without being provided the beginning or end, placing CW-1's testimony in an artificial vacuum unnecessarily devoid of proper context and meaning.

*Second*, CW-1's communications with the defendant before and after the charged offenses are also admissible under Rule 404(b) as proof of the defendant's intent, plan, knowledge, absence of mistake, and lack of accident.  CW-1's testimony and his communications with the defendant from both before and after the charged offenses shed important light on the defendant's intent and knowledge, demonstrate that he played a specific role in a well-laid plan, and that he was not operating under some mistaken belief or participating in the crime by accident.  *See, e.g.*, *United States v. Flom*, 256 F. Supp. 3d 253, 257 (E.D.N.Y. 2017) (court admitted evidence of prior uncharged money laundering scheme under Rule 404(b) because it was "probative and relevant"

13

to explain how defendant came to "meet and trust" co-conspirators in the charged scheme and to defendant's knowledge of the charged scheme's "fraudulent nature"). This evidence bears directly on what is anticipated to be the central issue at trial—the defendant's knowledge and intent, that is, whether he was knowingly and intentionally participating in a crime, or whether he was some unwitting dupe. *See, e.g.*, *Nektalov*, 325 F. Supp. 2d at 372 (testimony of cooperating witness regarding prior money laundering transactions with defendant admissible "to show the background of the charged conspiracy and the relationship between [defendant] and the CW, as well as the defendant's knowledge and intent with respect to the charged offenses"). Where, as is expected here, the defendant "disavows awareness that a crime was being perpetrated" and the Government bears the burden of proving knowledge "as an element of the crime, knowledge is properly put at issue." *Ramirez*, 894 F.2d at 568-69. Thus, evidence of involvement in similar conduct, and discussions with a co-conspirator such as CW-1 that lay bare the defendant's knowledge of the true nature of that conduct, are admissible to prove the defendant's knowledge and intent. *See United States v. Aminy*, 15 F.3d 258, 260 (2d Cir. 1994) ("Where, for example, the defendant does not deny that he was present during a narcotics transaction but simply denies wrongdoing, evidence of other similar narcotics involvement may, in appropriate circumstances, be admitted to show knowledge or intent."); *Zackson*, 12 F.3d at 1182.[4]

---

[4] Of course, the defendant could eliminate the issue of knowledge and intent—and thereby moot the purpose of admitting evidence relevant to these issues, whether under Rule 404(b) or otherwise—either by proceeding with a defense that does not dispute these issues or by agreeing to a stipulation that removes these issues from consideration. The Second Circuit has explained, however, that

> to take such an issue out of a case, a defendant must make some statement to the court of sufficient clarity to indicate that the issue will not be disputed. A defendant may not purposely use ambiguity tactically, seeking to gain the one advantage of barring admission of prior acts evidence by proffering a particular defense theory, only to

Nor is there a danger of "unfair prejudice," Fed. R. Evid. 403, with respect to this evidence. "Because virtually all evidence is prejudicial to one party or another, to justify exclusion under Rule 403 the prejudice must be *unfair*." *Costantino*, 203 F.3d at 174 (emphasis in original). There is nothing unfair in the admission of straightforward, non-sensational evidence, which will be offered in part through a witness who is already expected to testify, and in part through text or other electronic communications with that witness. This is especially so because it is likely that CW-1's credibility will be aggressively attacked (including in the defendant's opening statement), opening the door to the admission of this limited, additional evidence in any event, to assist the Government in corroborating CW-1's testimony with respect to the charged offense. *See, e.g.*, *United States v. Barrentine*, 591 F.2d 1069, 1081 (5th Cir. 1979) (defense cross-examination of government's cooperating witness about prior crimes, bias, and motive to cooperate with the government opened the door to redirect examination about defendant's involvement in narcotics transaction and defendant's romantic involvement with witness's wife); *United States v. Basciano*, No. 03 Cr. 929 (NGG), 2006 WL 385325, at *6 (E.D.N.Y. Feb. 17, 2006) (admitting at RICO conspiracy trial evidence of "other gambling acts" to, among other things, "help the Government . . . corroborate the testimony of cooperating witnesses").

---

later seek the additional advantages stemming from arguing lack of intent to the jury.

*Colon*, 880 F.2d at 659. In short, to forestall the admission of evidence on the issues of intent or knowledge, a defendant must affirmatively express a decision not to dispute that issue with sufficient clarity that the Court will be justified (a) in sustaining objections to any subsequent cross-examination or jury argument that seeks to raise the issue, and (b) in charging the jury that if they find all the other elements established beyond a reasonable doubt, they can resolve the issue against the defendant because it is not disputed. *United States v. Figueroa*, 618 F.2d 934, 942 (2d Cir. 1980). Here, the defendant has not made such a decision.

**III.    The Court Should Admit Evidence of the Defendant's and His Corporate Entities' Failure to File Income Tax Returns or Disclose Income to the IRS.**

At trial, the Government intends to call as a witness a representative of the Internal Revenue Service who will testify briefly that, among other things, a diligent search has been conducted for any tax returns filed by, or income disclosures made by, the defendant and two of his corporations, Unique Bamboo Investment, Inc. (of which he was Vice-President during the charged conduct) and Emergent Development Corporation (of which he was President during the charged conduct),[5] and that no tax returns or income disclosures have been filed for the defendant or those corporate entities for the tax years 2017 or 2018.  Despite this failure to file, the evidence at trial will show that (i) in 2017, the defendant and Emergent Development Corporation received and laundered fraud proceeds from the University Fraud Scheme; (ii) in 2018, the defendant and Unique Bamboo Investment, Inc. received and laundered fraud proceeds from the charged fraud scheme; and (iii) also in 2018, the defendant and Emergent Development Corporation received and laundered fraud proceeds from the Hospital Fraud Scheme.  As set forth below, the lack of any filings or disclosures to the IRS in relation to this income is relevant and compelling evidence of the defendant's knowledge and intent.

The defendant's and his corporate entities' failure to report income from the fraud schemes provides direct evidence that the defendant understood that this money was not legitimate income for him and his corporate entities.  This evidence therefore provides direct proof of the defendant's intent to defraud.  *See, e.g.*, *United States v. Bergstein*, 788 F. App'x 742, 745 (2d Cir. 2019) ("The government properly introduced [the defendant's] tax returns to show that even though [he] maintained that his income was legitimate, shell companies under his control did not report or pay

---

[5] Both Florida corporations were administratively dissolved, in 2019 and 2020 respectively, for failure to file annual reports.

taxes on [the] income."); *United States v. Shea*, S2 20 Cr. 412, Dkt. No. 214 (AT) (S.D.N.Y. May 6, 2022) (Tr. 9-10) (denying defendant's motion to preclude evidence of defendant's failure to report income at fraud and money laundering trial because "[s]uch evidence tends to show that Defendant knew the funds he received were illegitimate and that he took pains to conceal them"). Moreover, the evidence is relevant and critical to rebutting an expected defense—namely, that the defendant thought that the transactions at issue were legitimate and that he was therefore entitled to the money "earned" from the transactions. *See, e.g.*, *United States v. Valenti*, 60 F.3d 941, 946 (2d Cir. 1995) ("The tax returns were obviously probative to refute [the defendant's] defense that the contested funds were legitimate compensation."); *United States v. Adelekan*, No. 19 Cr. 291, Dkt. No. 393 (LAP) (S.D.N.Y. Oct. 22, 2021) (Tr. 488) (denying defense motion to preclude IRS testimony at fraud and money laundering trial regarding failure to file tax returns and report income because "the testimony will be direct evidence of the concealment of the source of the funds").

In the alternative, the defendant's and his corporate entities' failure to file tax returns or disclose income to the IRS is admissible pursuant to Rule 404(b), as it is highly probative of the defendant's intent, plan, knowledge, and absence of mistake or accident in engaging in the charged crimes. *See United States v. Kurland*, No. S1 20 Cr. 306 (NGG), 2022 WL 2669897, at *7-8 (E.D.N.Y. July 11, 2022) (admitting evidence of failure to report income at fraud trial pursuant to Rule 404(b) and observing that "[c]ourts in the Second Circuit frequently admit tax evidence in cases involving other types of fraud to show the defendant's plan, lack of mistake, and knowledge that the funds were proceeds of illegitimate activity"). The failure to file or disclose income demonstrates, among other things, that the defendant knew that the "income" he derived from his participation in the fraud scheme was illegitimate and that he sought to conceal it. The tax records also show an absence of mistake or accident in that the defendant, the Government would argue,

17

likely would have filed tax returns and disclosed the "income" he purportedly earned if it had not been derived from fraud and money laundering.  The tax-related testimony is therefore important to rebut any defense that the defendant acted in good faith and was lawfully entitled to the crime proceeds that he received.  *See Bergstein*, 788 F. App'x at 745; *United States v. Osarenkhoe*, 439 F. App'x 66, 68 (2d Cir. 2011) (approving admission of tax return evidence under Rule 404(b)); *United States v. Avenatti*, No. 19 Cr. 374, Dkt. No. 288 (JMF) (S.D.N.Y. Jan. 13, 2022) (Tr. 14) ("[I]f the proceeds were lawful, legitimate proceeds to which Mr. Avenatti was entitled, they would have presumably been income and he would have been required to report them to the IRS.  The fact that he did not do so tends to rebut any claim that they were lawful and legitimate.").

Finally, particularly in the context of this case, which involves wire fraud and money laundering schemes, there is no basis to think that evidence that the defendant failed to disclose certain income would be unfairly prejudicial within the meaning of Rule 403.  *See, e.g.*, *United States v. Barbera*, No. 21 Cr. 154 (JGK), 2022 WL 3157116, at *8 (S.D.N.Y. Aug. 5, 2022) (rejecting Rule 403 objection to tax evidence at fraud trial because "the tax evidence was no more sensational than the other evidence in the case" and was "sufficiently separate from the charges in the case so that there is no conceivable risk that the jury used it for an improper propensity purpose"); *United States v. Shah*, S4 19 Cr. 833 (SHS) (S.D.N.Y. May 25, 2022) (Tr. 7-9) (attached as Exhibit 1 hereto) (denying defendant's motion to preclude evidence that defendant's "income from the alleged fraudulent conspiracy was not reported to the IRS" because such evidence is "appropriate and relevant and not unduly prejudicial under 403"); *Shea*, S2 20 Cr. 412, Dkt. No. 214 (AT) (S.D.N.Y. May 6, 2022) (Tr. 9-10) (holding that tax evidence that "tends to show that Defendant knew the funds he received were illegitimate and that he took pains to conceal them" "should not be excluded under Rule 403 because it is not 'more sensational or disturbing'

than the charged crime[s]" of wire fraud and money laundering).  As in other cases where such evidence has been admitted, there is nothing salacious or unfair about introducing evidence regarding the defendant's non-disclosure of income to demonstrate his own view of the proceeds of his crime.  *See Valenti*, 60 F.3d at 946 ("Any arguable prejudice to [the defendant] was *de minimis:* it strains credulity to think that the jury might have believed [the defendant] innocent of transporting stolen goods, but voted to convict him anyway just because he failed to report income on his tax returns."); *see also Bergstein*, 788 F. App'x at 745; *Osarenkhoe*, 439 F. App'x at 68.

Accordingly, the Court should admit evidence of the defendant's and his corporate entities' failure to file income tax returns or otherwise disclose income to the IRS.

## **CONCLUSION**

For the foregoing reasons, the defendant's motions *in limine* should be denied.

Dated: New York, New York
       September 6, 2022

<div style="margin-left: 40%;">

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:      _____/s/_____
         Catherine E. Ghosh
         Jilan J. Kamal
         Robert B. Sobelman
         Assistant United States Attorneys
         (212) 637-1114/2192/2616

</div>