

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 9, 2022

**BY ECF**

The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    *United States v. Mustapha Raji*, 19 Cr. 870 (JMF)

Dear Judge Furman:

    The Government respectfully submits this letter to provide additional information about the category of evidence on which the Court reserved decision at yesterday's final pretrial conference.

    By way of background, the Government described the evidence at issue in its notice to the defendant on August 30, 2022, as follows:

> [B]etween in or about May 2019 and in or about October 2019, the defendant engaged with CW-1 in discussions to plan the receipt and laundering of approximately $2.3 million in fraudulent funds. Materials related to this conduct were produced in discovery as USAO_00047283 – USAO_00047361.

    At trial, the Government intends to elicit from CW-1 that, beginning in or about August 2018, CW-1 began cooperating with law enforcement. As of May 2019, CW-1 had been directed by law enforcement to continue his engagement with individuals with whom he had previously engaged in fraud and money laundering activity. In furtherance of his cooperation, CW-1 reached out to the defendant by telephone to propose that the defendant provide to CW-1 a bank account to receive a fraudulent $2.3 million wire transfer. In particular, CW-1 told the defendant that there was an "insider" at the company who would divert an otherwise legitimate payment for $2.3 million to an account CW-1 would provide. The defendant agreed to do so and there was substantial back-and-forth between the defendant and CW-1, via the messaging application WhatsApp, about how and when the fraudulent transfer would be made. CW-1's testimony is corroborated by GX 313, 313A, 313B, and 313C, which consist of a selection of

Honorable Jesse M. Furman
United States District Judge
September 9, 2022
Page 2

WhatsApp messages and attachments exchanged between the defendant and CW-1 during the time period of May 27, 2019 and June 3, 2019.[1]

CW-1's testimony and the text message exhibits are relevant and admissible to show the defendant's knowledge and intent at the time of the charged conduct. The Government anticipates that CW-1 will testify, in substance, that he reached out to the defendant and told the defendant, in sum and substance, "I have another job or wire for you," and the defendant readily understood what CW-1 was asking: for a business bank account into which a fraudulent wire transfer could be sent. The defendant—who, the evidence will show, was aware that funds from the July 2018 "job" he did with CW-1 had been frozen by the banks (to the extent the money was still available) as fraudulently obtained—did not show confusion or ask why CW-1 would ask him for a bank account that could receive $2.3 million diverted by an "insider" at a company. Rather, the defendant jumped at the chance and immediately dove into the details of how to get the "job" done. This is compelling evidence that the defendant knew the fraudulent nature of the conduct he was involved in between July and September 2018, as in this later interaction with CW-1 he essentially reprised the same role he had played in the charged scheme.

The related exhibits include several text messages that provide a meaningful window into the defendant's knowledge and intent. For example:

- The defendant wrote to confirm to CW-1 that, after the planned fraudulent wire transfer,

> And well get at least 2 weeks to clean house   12:55 PM

(GX 313, at 3.)

The Government anticipates that CW-1 will testify that "clean house" is a term the defendant used to describe emptying out a bank account before the money was frozen by a bank.

- CW-1 explained to the defendant that the total transaction by the company to be defrauded was "$104.90m" and "Facilitator fees is $2.3m." (GX 313, at 4.) The defendant then confirmed that they would only be fraudulently diverting the smaller amount:

---

[1] GX 313, 313B, 313C, and 313A-T, which is a transcript of an audio recording of the defendant's voice marked as GX 313A, are attached hereto.

> We only going after facilitator fees?
>
> 2:15 PM

(GX 313, at 5.)

Although this text message may speak for itself, the Government anticipates that CW-1 will testify that he understood the defendant's use of "going after" to mean precisely what CW-1 had told him about the planned transaction: they would work together to fraudulently divert the $2.3 million in facilitator fees that were supposedly accompanying a larger transaction. Again, this is significant evidence that the defendant was aware that the prior transaction he did with CW-1—the Marble Arch scheme—was not a legitimate business transaction.

- Shortly after that exchange, the defendant sent CW-1 wire instructions for a bank account to which the fraud proceeds should be sent (GX 313, at 6; GX 313B) and a "Client Information Sheet," or "CIS," to which a copy of another person's passport was attached (GX 313, at 7; GX 313C). As noted by the Government at yesterday's conference, the term "CIS" was used in communications between the defendant and CW-1 during the charged scheme. (*See, e.g.*, GX 314, at 4 ("Especially citi with the cis").[2]) Just as during the defendant's May 2019 interactions with CW-1, the defendant used a "Client Information Sheet" to facilitate the charged scheme, and used the term "CIS" in connection with that document as well. (*See* GX 212, 212A.[3]) The subsequent communications using the same term to describe documents to paper over the fraudulent transactions (*see, e.g.*, GX 313, at 5 ("This guys need cis"), 7 ("Confirm u see CIS")) shed light on the meaning of the term as it was used by the defendant and CW-1, as well as the fact that the defendant knew what that term meant and how the type of document to which it referred was used in the fraud scheme charged in this case.

In addition, the Government anticipates that the defendant will aggressively attack CW-1's credibility in his opening statement and during his cross-examination of CW-1. Once such an attack is made, the aforementioned evidence will become even more probative because it will permit the Government to attempt to rehabilitate CW-1's credibility. *See, e.g.*, *United States v. Barrentine*, 591 F.2d 1069, 1081 (5th Cir. 1979) (defense cross-examination of government's cooperating witness about prior crimes, bias, and motive to cooperate with the government opened the door to redirect examination about defendant's involvement in narcotics transaction and

---

[2] GX 314, which is attached hereto, is a WhatsApp text message exchange between the defendant and CW-1 that took place between September 1 and 11, 2018.

[3] GX 212 and GX 212A, which are both attached hereto, is an email sent by the defendant on July 11, 2018 from his personal email account to two business email accounts he controlled, and the attachment thereto, respectively.

Honorable Jesse M. Furman
United States District Judge
September 9, 2022
Page 4

defendant's romantic involvement with witness's wife); *United States v. Basciano*, No. 03 Cr. 929 (NGG), 2006 WL 385325, at *6 (E.D.N.Y. Feb. 17, 2006) (admitting at RICO conspiracy trial evidence of "other gambling acts" to, among other things, "help the Government . . . corroborate the testimony of cooperating witnesses").

     Based on the foregoing, the arguments in the Government's opposition to the defendant's motion *in limine* (Dkt. No. 102, at 8-15), and the arguments presented at yesterday's final pretrial conference, the defendant's motion to preclude the aforementioned evidence should be denied.

                                Respectfully submitted,

                                DAMIAN WILLIAMS
                                United States Attorney

                By:     /s/
                        Catherine E. Ghosh
                        Jilan J. Kamal
                        Robert B. Sobelman
                        Assistant United States Attorneys
                        (212) 637-1114/2192/2616

Attachments

cc:     Jeremy Schneider, Esq. (by ECF)