

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

May 15, 2023

**BY ECF AND EMAIL**

The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *United States v. Mustapha Raji*, 19 Cr. 870 (JMF)

Dear Judge Furman:

      In connection with the upcoming sentencing of defendant Mustapha Raji, the Government respectfully submits the attached letter (the "BOP Letter") from the Federal Bureau of Prisons Regional Medical Director, Dr. Diane Sommer, regarding the BOP's ability to care for Raji based on the medical conditions described in the PSR and his sentencing submission.

      Among other things, Dr. Sommer writes that "Mr. Raji may be reviewed for designation by the BOP Office of Medical Designations and Transfers" and "a determination would be made as to the appropriate facility, either a Federal Medical Center or a general population institution." (BOP Letter at 1.) Dr. Sommer explains that Federal Medical Centers "provid[e] chronic care for seriously ill inmates" and "also provide services such as chemotherapy, pain management clinics, dialysis, and hospice care for terminally ill inmates." (*Id.* at 2.) Dr. Sommer further writes that "[i]f needed, the BOP would be able to provide Mr. Raji with medical specialists through the BOP's contractual agreements." (*Id.*)

      If the defendant is designated to a general population institution rather than a Federal Medical Center, Dr. Sommer explains that "it is likely he would be assigned to the Hypertension, Cardiac, and Nephrology Chronic Care Clinics," and "[i]nmates enrolled in chronic care clinics are seen as often as medically necessary." (*Id.* at 2-3.)

      Dr. Sommer concludes that "[b]ased on the information provided to me and my knowledge of the BOP's medical resources, the BOP will be able to provide appropriate care for Mr. Raji should he be sentenced to a term of incarceration and committed to the custody of the BOP." (*Id.* at 3.)

Honorable Jesse M. Furman
United States District Judge
May 15, 2023
Page 2

      For the reasons stated in the Government's May 9, 2023 sentencing submission (Dkt. No. 135) and based on Dr. Sommer's letter describing the medical care available to the defendant while in BOP custody, the Government submits that a sentence of at least 78 months' incarceration is appropriate.

                                        Respectfully submitted,

                                        DAMIAN WILLIAMS
                                        United States Attorney

By:    s/_____
       Catherine E. Ghosh
       Jilan J. Kamal
       Robert B. Sobelman
       Assistant United States Attorneys
       (212) 637-1114/2192/2616

cc:    Counsel of Record (by ECF)

Enclosure



**VIA E-MAIL**

**U.S. Department of Justice**

Federal Bureau of Prisons

*Northeast Regional Office*

---

*U.S. Custom House*
*2nd & Chestnut Streets, 7th Floor*
*Philadelphia, PA 19106*

May 11, 2023

Catherine E. Ghosh
Assistant United States Attorney
United States Attorney's Office
Southern District of New York
One Saint Andrew's Plaza
New York, NY 10007

    Re:   United States v. Mustafa Raji
           Case No. 19 Cr. 870 (JMF) (S.D.N.Y.)

Dear Ms. Ghosh:

    Thank you for your recent inquiry concerning the Federal Bureau of Prisons' (BOP) ability to provide adequate health care for federal prisoners with significant, acute, or chronic medical conditions. Specifically, you have asked whether, based on the available information, the BOP can provide the necessary and appropriate care for Mr. Mustafa Raji should he be sentenced to a term of incarceration in a federal correctional facility.

    I am aware of Mr. Raji's medical conditions as delineated in the Presentence Investigation Report and defense counsel's sentencing submission. The records indicate Mr. Raji suffers, or has recently suffered, from stage 4 chronic kidney disease; essential primary hypertension; heart failure; nonrheumatic mitral valve disorder; sleep apnea; and obesity. Those documents further indicate that Mr. Raji has a history of a brain aneurysm and a parathyroidectomy.

    The BOP has implemented a medical care level classification system. The care level classification system is intended to enhance the BOP's ability to manage inmate health care effectively by matching inmates with those institutions that can best meet their medical needs, while at the same time achieving optimal use of the BOP's health care resources.

    If committed to the custody of the BOP, Mr. Raji may be reviewed for designation by the BOP Office of Medical Designations and Transfers. At that time, a determination would be made as to the appropriate facility, either a Federal Medical Center or a general population institution, in which to designate Mr. Raji.

...

Catherine E. Ghosh
U.S. Attorney's Office S.D.N.Y.
May 11, 2023
Page 2

Federal Medical Centers are prisons that provide in-patient care to seriously ill inmates. The BOP has seven of these centers throughout the United States, including FMC Carswell which houses female offenders. Besides providing chronic care for seriously ill inmates, these medical centers also provide services such as chemotherapy, pain management clinics, dialysis, and hospice care for terminally ill inmates. Each medical center also has a long-term unit for inmates requiring 24-hour nursing care.

BOP institutions are accredited by the Joint Commission on Accreditation for Health Care Organizations, which sets the medical, surgical, and psychiatric standards for hospitals nationwide. Additionally, each BOP institution contracts with medical centers in the local vicinity to provide specialized medical treatment. These medical centers offer the BOP a wide range of trained specialists and diagnostic tools such as MRIs and CT Scans. If needed, the BOP would be able to provide Mr. Raji with medical specialists through the BOP's contractual agreements. While it is true many of these specialists are not located inside the institution, the BOP has procedures in place to transport inmates to and from local hospitals and other contracted medical centers so that inmates can receive appropriate and necessary care. Further, when medical emergencies and the need for surgical procedures arise, each institution has procedures in place that instruct health services and/or correctional staff on how to contact local emergency medical services for transportation to a local medical center.

Every BOP facility, regardless of care level, has a Health Services Department, typically staffed with a physician(s) and several mid-level providers, such as physician assistants and nurse practitioners, along with technical and administrative staff. Most Health Services Departments conduct "sick-call" four or more days per week for the entire inmate population.

All inmates entering our facilities are thoroughly screened by medical staff for physical and mental health conditions. They are monitored thereafter through follow-up appointments and chronic care clinics, as necessary. A medical plan of action for an inmate includes a thorough and timely history and physical exam to ascertain the mental health and medical status of each inmate upon their arrival to a BOP facility. Following this screening, the treating Clinical Director and Chief Psychologist may formulate a plan that addresses his/her medical, mental health and activities of daily living. This plan may include assessment of the daily functioning, i.e., handicap living quarters, need for a bottom bunk, ambulatory aides or bracing, inmate companion for assistance of activities of daily living, pharmacy line oversight, psychological care and therapies, specialty consultations, etc.

Every general population institution runs a number of chronic care clinics whose purpose it is to provide routinely scheduled quality care to medically ill inmates, as well as to stay cognizant of any changes in medical conditions that may arise. Inmates enrolled in chronic care clinics are seen as often as medically necessary. If

Catherine E. Ghosh
U.S. Attorney's Office S.D.N.Y.
May 11, 2023
Page 3

Mr. Raji is designated to a general population institution, it is likely he would be assigned to the Hypertension, Cardiac, and Nephrology Chronic Care Clinics. If incarcerated, it would be helpful if Mr. Raji provides medical records to his treating physician at the institution in order for the physician to obtain a full medical history.

    The BOP has an extensive National Formulary of medications approved for inmate use. If Mr. Raji is prescribed medications that are not explicitly on the Formulary, substantially similar equivalents would be prescribed. Finally, if a substantially similar equivalent is not available, a non-Formulary request can be made by his treating clinician to the BOP's Central Office in Washington, D.C. Non-formulary requests can usually be accomplished within 36 hours of the clinician's request. If Mr. Raji is incarcerated, he should bring all current medications with him upon self-surrendering to his designated facility. The medications will then be reconciled with medications from the National Formulary.

    Based on the information provided to me and my knowledge of the BOP's medical resources, the BOP will be able to provide appropriate care for Mr. Raji should he be sentenced to a term of incarceration and committed to the custody of the BOP. For your convenience, I have attached a general outline to explain how the BOP designates prisoners with medical illnesses and to describe the medical services available within the BOP.

    Sincerely,

    *Diane Sommer, MD*

    Diane Sommer, M.D.
    Regional Medical Director
    Northeast Region

Enclosure

**OUTLINE OF BUREAU OF PRISONS CARE LEVELS AND EXAMPLES**

There are four CARE Levels in the Bureau of Prisons (BOP) medical CARE Level classification system.  After initial designation and provisional care level assignment by the Designation and Sentence Computation Center (DSCC), non-provisional CARE Levels are determined by BOP clinicians.  These assignments depend on treatment modalities and inmate functionality in addition to diagnostic categories such as cancer, diabetes, HIV, hepatitis.

Q.  **Who are CARE Level 1 inmates and who designates them?**
- Inmates are generally healthy, but may have limited medical needs that can be easily managed by clinician evaluations every six months; and
- Inmates are less than 70 years of age.
- CARE Level 1 designations are made by the DSCC.
- **Examples**:  mild asthma, diet-controlled diabetes, stable HIV patients not requiring medications.

Q.  **Who are CARE Level 2 inmates and who designates them?**
- Inmates are stable outpatients who require clinician evaluation every 1 - 6 months.
- Can be managed in chronic care clinics, including for mental health issues.
- Enhanced medical resources may be required from time to time, but are not regularly necessary.
- CARE Level 2 designations are made by the DSCC.
- **Examples**:  medication-controlled diabetes, epilepsy, or emphysema.

Q.  **Who are CARE Level 3 inmates and who designates them?**
- Inmates are fragile outpatients who require frequent clinical contacts to prevent hospitalization for catastrophic events.
- May require some assistance with activities of daily living, but do not need daily nursing care.
- Inmate companions may be used to provide assistance.
- Stabilization of medical or mental health conditions may require periodic hospitalization.
- **Examples**:  cancer in remission less than a year, advanced HIV disease, severe mental illness in remission on medication, severe congestive heart failure, end-stage liver disease.
- **Designation of CARE Level 3 inmates is made by the BOP's Office of Medical Designation and Transportation in Washington, D.C.**

**Q.   Who are CARE Level 4 inmates and who designates them?**
- Inmates require services available only at an MRC (which provide significantly enhanced medical services and limited in-patient care).
- May need daily nursing care.
- Functioning may be severely impaired and requires 24-hour skilled nursing care or nursing assistance.
- **Examples:**  cancer on active treatment, dialysis, quadriplegia, stroke or head injury patients, major surgical patients, acute psychiatric illness requiring inpatient treatment, high-risk pregnancy.
- **Designation of CARE Level 4 inmates is made by the BOP's Office of Medical Designation and Transportation in Washington, D.C.**

**Q.  When is the CARE Level classification process going to be implemented?**
A. It is currently in use.

**Q.  What can I, as a federal judge, do in the sentencing process to assist in the designations process?**
- Until an inmate comes into the BOP and is evaluated by a health care provider, the Presentence Report (PSR) is the BOP's principal resource for initially assessing medical conditions.
- The Court can assist the BOP in this process by requesting that the PSR contain complete and current information regarding the medical and mental health status of the inmate (for example, new or additional information that may be available from the local jail or the defendant's personal physician).  In order to facilitate appropriate Care Level designation, the Court should recommend that all current medical information be forwarded to the BOP at the time of sentencing.

**Q.  Whom should the judges contact concerning designations for defendants from their courts?**
- The first point of contact within the BOP for defendants who do not have significant medical or mental health conditions should be the DSCC.