N9JJRAJS

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4                  v.                        19 Cr. 870 (JMF)

5   MUSTAPHA RAJI,

6                                            Sentence
                   Defendant.
7   ------------------------------x

8
                                            New York, N.Y.
9                                           September 19, 2023
                                            2:30 p.m.
10

11  Before:

12                      HON. JESSE M. FURMAN,

13                                          District Judge

14                           APPEARANCES

15  DAMIAN WILLIAMS
        United States Attorney for the
16      Southern District of New York
    JILAN KAMAL
17  CATHERINE E. GHOSH
    ROBERT SOBELMAN
18      Assistant United States Attorneys

19  ROTHMAN, SCHNEIDER, SOLOWAY & STERN, LLP
        Attorneys for Defendant
20  BY:  JEREMY SCHNEIDER
        RACHEL PERILLO
21

22  Also Present:

23  Michael Ryan, FBI

24

25

N9JJRAJS

```
1              (Case called)

2              THE DEPUTY CLERK:  Counsel, please state your name for

3    the record.

4              MS. KAMAL:  Good afternoon, your Honor.

5              Jilan Kamal, Catherine Ghosh, and Rob Sobelman, on

6    behalf of the United States.  And with us is Agent Ryan from

7    the FBI.

8              THE COURT:  Good afternoon.

9              MR. SCHNEIDER:  Good afternoon, your Honor.

10             Jeremy Schneider and Rachel Perillo, appearing for

11   Mr. Raji.  Good afternoon, sir.

12             THE COURT:  Good afternoon.  Welcome back, everyone.

13             We are finally here for purposes of sentencing.  I

14   realized earlier today that it was literally a year to the day

15   that the verdict was returned in this case, so not exactly

16   speedy, but here we are.

17             In connection with today's proceeding, I have reviewed

18   the presentence report, dated April 24, 2023.  I've also

19   received and reviewed the following additional submissions:

20   The defense submissions dated May 2 and September 13, as well

21   as the attachments to those submissions, which include various

22   letters addressed to me, including letters from Mr. Raji's

23   sister and cousin, some charities, and other family members and

24   the like; a birth certificate; some medical records and

25   certificates from the Bureau of Prisons; and the government
```

N9JJRAJS

1    submissions dated May 9, May 15, and June 13 of this year.

2          First, have each of you received the other's

3    submissions?  I guess most notably, has the government received

4    all of the defense submissions including the exhibits that were

5    filed with the request that they be sealed?

6          MS. KAMAL:  Yes, your Honor.

7          THE COURT:  And is there anything else that I should

8    have received, aside from what I just listed?

9          MR. SCHNEIDER:  Your Honor, I think the government

10   submitted a letter on September 15.

11         THE COURT:  Sorry.  You're absolutely right.

12         MR. SCHNEIDER:  I have seen that letter.

13         THE COURT:  As did I.  I apologize.  I just omitted it

14   from the list.  So I have also gotten that.

15         Anything aside from those?

16         MS. KAMAL:  Not from the government, your Honor.

17         MR. SCHNEIDER:  No, we're good, Judge.  Thank you.

18         THE COURT:  I have reviewed the defense exhibits and

19   agree that the medical exhibits and birth certificate should be

20   filed under seal also.  I will file those under seal.  In the

21   event of an appeal, they may be accessed by counsel on appeal

22   without further application to me, but otherwise will remain

23   under seal.

24         Can I confirm with the government that anyone entitled

25   to notice as a crime victim has been provided with notice of

N9JJRAJS

1    today's proceeding?

2              MS. KAMAL:  Yes, your Honor.  The victims are aware of

3    the proceedings.

4              THE COURT:  Do you know if anyone wishes to be heard

5    on that score?

6              MS. KAMAL:  No, your Honor.  The victims all

7    participated in the trial, and they told me they would rest on

8    their representations and their testimony here.

9              THE COURT:  All right.  Very good.

10             Before I turn to sentencing, Mr. Schneider, I just

11   wanted to give you an opportunity to be heard with respect to

12   the government's letter of June 13, which noted that the

13   government had determined that there was an error in the jury

14   instructions, and expressed its view as to why that error

15   didn't have any legal significance here.

16             Did you wish to be heard on that?

17             MR. SCHNEIDER:  I don't wish to be heard as to the

18   substance, but I think at the end of the sentence I will

19   probably ask to be relieved for the appeal.  Generally, because

20   I think after trial it's good to have a fresh set of eyes, but,

21   specifically, because of that letter, it's obviously a mistake

22   that I made with the government regarding the instructions.  I

23   think maybe there are other mistakes that I may have made that

24   the government didn't agree with or the government didn't make

25   your Honor aware of.  So in terms of the substance of the

N9JJRAJS

1   June 13 letter, I have nothing to add to that, no.

2               THE COURT:  All right.  Very good.  Understood.

3               And I guess we'll take that up at the conclusion.  For

4   what it's worth, I agree with the government that the error —

5   and it does seem that it was an error — doesn't have effect

6   here, both because of the invited-error doctrine, but

7   substantively it also seems inconceivable to me that that error

8   could have any prejudice to Mr. Raji, since there was really

9   ample evidence of his own participation in the fraud scheme.

10  And, indeed, it would be hard to reconcile the jury's

11  conviction on the substantive count without that evidence, so

12  bottom line is I don't think it had any impact.  But obviously

13  if it's raised on appeal, it will be up to the Court of Appeals

14  to determine.

15              Now, Mr. Schneider, have you reviewed the presentence

16  report?

17              MR. SCHNEIDER:  I have, with Mr. Raji, yes.

18              THE COURT:  And putting aside the guidelines for a

19  moment, I know you have some objections on that score.  Any

20  objections or corrections to the factual recitation set forth

21  in the presentence report?  And I recognize you're preserving

22  your objection to the factual description of the offense.  I

23  think it accurately describes the record at trial, but I think

24  you're preserving the appellate issues on that score.

25              MR. SCHNEIDER:  You said just what I was going to say,

N9JJRAJS

1   so I have nothing to add to that, Judge.

2          THE COURT:  Mr. Raji, have you reviewed the

3   presentence report?

4          THE DEFENDANT:  Yes, I did.

5          THE COURT:  All right.  And did you discuss it with

6   Mr. Schneider?

7          THE DEFENDANT:  Yes, I did.

8          THE COURT:  And did you have enough time to do that,

9   to go over the report with Mr. Schneider and to discuss with

10  him anything that you wish to bring to my attention in

11  connection with sentencing?

12         THE DEFENDANT:  Yes, I did.

13         THE COURT:  Ms. Kamal, have you reviewed the

14  presentence report?

15         MS. KAMAL:  Yes, I have, your Honor.

16         THE COURT:  Putting aside the guidelines for a moment,

17  any objections to its factual accuracy?

18         MS. KAMAL:  No, your Honor.

19         THE COURT:  All right.  Hearing no objections, aside

20  from the preservation of Mr. Raji's appellate rights, I will

21  adopt the factual recitation set forth in the presentence

22  report, which will be made part of the record in this matter

23  and placed under seal.  In the event that an appeal is taken,

24  counsel on appeal may have access to that sealed report without

25  further application to me.

N9JJRAJS

1          Now, turning to the guidelines, as counsel know, I'm

2     not bound by the guidelines, but I do have to consider the

3     applicable guidelines range in imposing a sentence, and that

4     requires me to accurately calculate that range.  In this case,

5     the presentence report calculates the offense level as 33, the

6     criminal history category as I, and the corresponding

7     guidelines range is 135 to 168 months, with a supervised

8     release range of one to three years, and a fine range of 35 to

9     $350,000.

10          And defendant has lodged three objections.  I think

11     two are relatively easily resolved because the defense concedes

12     that they run contrary to the law of this circuit.  First is to

13     the inclusion of relevant conduct and the loss amount, as the

14     defendant concedes that it runs contrary, not just to the

15     language of Section 1B1.3, but to the decisions of the Second

16     Circuit, including *United States v. Feldman*, which is cited on

17     page 3 of the defendant's sentencing submission.

18          And so, too, on the distinction between intended loss

19     and actual loss, as counsel acknowledges, runs contrary to the

20     law of the circuit, see page 5 of the defense brief, *United*

21     *States v. Lacey*.  The Third Circuit decision is interesting,

22     the question is interesting in light of the Supreme Court's

23     decision in *Kisor*, but the bottom line is I'm bound by the

24     Second Circuit, and unless intervening decision of the Supreme

25     Court renders that prior precedent so clearly wrong that it

N9JJRAJS

1  would inevitably be overruled by the Second Circuit, I can't

2  say that here, if only because the Second Circuit has

3  reaffirmed the principle since *Kisor*, namely in *United States*

4  *v. Powell*, which is cited by the government in its most recent

5  submission.

6        I would also cite to Judge Liman's decision in a case

7  called *Taboada v. United States*, 2023 WL 2466595, in which he

8  approved the inclusion of intended loss in the loss calculation

9  and found that there was ambiguity that was clarified by the

10  application note.  I'm not saying that's right or wrong, but

11  bottom line is I don't think the prior Second Circuit case law

12  is clearly wrong in light of *Kisor*, or given that it's up to

13  the Second Circuit to reevaluate its precedent, not up to me.

14  So bottom line is on both of those, I think I am bound to

15  reject the defense arguments and, therefore, do reject the

16  defense arguments.

17        The third issue, I think, is a closer call, and that

18  is whether a leadership enhancement is warranted, and I guess

19  I'll pose this question to the government.  There's no question

20  in my mind that Mr. Raji played a more significant role than

21  Ms. Martino-Jean, and that is relevant to the 3553 analysis,

22  and I'll have more to say on that later.  He clearly gave her

23  some instructions and directions with respect to moving the

24  money out of the account and what have you, but I'm not sure

25  that that necessarily makes him an organizer, leader, or

N9JJRAJS

1    manager of the conduct.

2             You stated in your letter several times that Mr. Raji

3    recruited Ms. Martino-Jean to the scheme, and I don't recall --

4    maybe there is evidence in the record to support that.  Is

5    there support for that proposition as opposed to the text

6    exchanges in which Mr. Raji certainly is giving some

7    directions?  But I'm not sure that that necessarily supports

8    the weight of the argument that you're making.

9             MS. KAMAL:  May I have one moment, your Honor?

10            THE COURT:  Yes.

11            MS. KAMAL:  So your Honor, in terms of the evidence

12   that was put forward at trial, the Court is correct that for

13   our position we were relying on the text messages between

14   Mr. Raji and Ms. Martino-Jean in which he is telling her when

15   to expect money movements, telling her what to do with them,

16   and basically he is the one who is in contact with the -- let's

17   call them the ultimate principals of the scheme.  The only

18   appropriate inference here is that he is the one who has

19   brought her into the scheme, otherwise how would she know and

20   how would she have become involved, if not at his direction?

21            The other evidence before the Court and at trial was

22   that the cooperator, Mr. Afolabi Adeusi, he explained that

23   Mr. Raji's role in these schemes, as he understood it, was

24   effectively as a broker of accounts.  As we saw from the 404(b)

25   evidence, Mr. Raji occasionally used his own accounts, but he

N9JJRAJS

1    was also reaching out to others and bringing in others who had

2    accounts that could accept large amounts and move the money

3    quickly.  Ms. Martino-Jean was just that, she both worked for a

4    law firm and she was a real estate agent.  And in connection

5    with her other work, she had access to the type of accounts

6    that would be moving and accepting large quantities of money,

7    which is exactly what Mr. Raji was tasked with procuring for

8    the scheme.

9           So from our point of view, that is what supports the

10   inference here that he recruited her to the scheme, and he was

11   the one who was giving her direction.

12          THE COURT:  All right.  Mr. Schneider, do you wish to

13   be heard?

14          MR. SCHNEIDER:  Yes.  May I remain seated just so I

15   can read, Judge?

16          THE COURT:  As long as you put the microphone down so

17   I can hear you.

18          MR. SCHNEIDER:  Absolutely.  Is that okay?

19          THE COURT:  Yes.

20          MR. SCHNEIDER:  Thank you, your Honor.  Appreciate it.

21          Well, let's remember that Ms. Martino-Jean has already

22   pled guilty, and let's remember that in the government's own

23   sentencing submissions they painted her as someone who didn't

24   just make one mistake but acted in a calculated period of time

25   committing a course of crimes.  Let's also remember that she

1    was the one who got significantly more money than Mr. Raji.

2    She was the one who distributed large portions of the proceeds

3    to persons and entities with whom she was associated, including

4    $700,000 of the fraud proceeds she used to pay off personal

5    debts where, according to the trial evidence, Mr. Raji only

6    received $50,000 of the proceeds.

7          How can the person who was supposedly the leader in

8    charge, the recruiter, get a fraction of what the person who

9    was -- Ms. Martino-Jean, who supposedly did nothing?  Remember,

10   again, she was the president of a company.  She had signatory

11   powers, she had a debit card; Mr. Raji didn't.  Mr. Raji didn't

12   have access to the accounts; Ms. Martino-Jean did.  So it seems

13   to me that it's possible not only should Mr. Raji not get a

14   leadership, but the more I talk about it, I'm convincing myself

15   he should get a minor role.

16         THE COURT:  I wouldn't push your luck.

17         MR. SCHNEIDER:  That's why I'm not talking about that.

18   I understand.

19         I think it's a significant question, and I think the

20   government's answer that you can assume she was recruited is

21   speculation.  Your Honor is right, the trial evidence did not

22   show that Mr. Raji recruited her.  And even if he did

23   "recruit," put that in quotes, so let's say he brought her on

24   to help, but she then took a greater role.  She's the one who

25   had much more decision-making authority.  She's the one who got

1    more money.  She's the one who gave the money, distributed it.

2    So it seems to me that he should not get an enhancement.

3              THE COURT:  Ms. Kamal?

4              MS. KAMAL:  If I may be heard very briefly on that

5    point.

6              THE COURT:  Sure.  But in the course of that — I was

7    planning to ask you about this later, but may as well ask you

8    about it now — I think Mr. Schneider's point about

9    Ms. Martino-Jean getting the vast majority of the proceeds that

10   were not recovered is an interesting, if not significant, one.

11   One generally doesn't think of the manager as getting the small

12   slice and the worker getting the vast majority of the profits,

13   but at least on the trial record that seems to be the case

14   here.

15             MS. KAMAL:  I take your point, your Honor.  But I

16   think there's another concept that we're all familiar with that

17   does a lot of the explanatory work here, and that is there is

18   no honor among thieves.

19             To be sure, Ms. Martino-Jean took the vast majority of

20   the sum, but that was not the instruction she was given by

21   Mr. Raji.  Mr. Raji was clearly horrified when he had to report

22   to the folks up the chain that the money they were waiting for

23   was apparently missing and that she had stopped communicating

24   with him.  And so what we see in the text messages and what was

25   reflected in the evidence at trial is that Ms. Martino-Jean

1    effectively went rogue.

2            She clearly took direction from Mr. Raji with respect

3    to what to do with the money, how it was to be disbursed and to

4    whom.  She was, as we can, we think, properly infer from that

5    evidence, recruited to the scheme by him.  But then at some

6    point she saw the opportunity in front of her, and she took the

7    lion's share for herself and attempted to effectively stonewall

8    and run away with the funds.

9            So while I take the Court's point and defense's point

10   that she ultimately wound up with more of the proceeds, that

11   was not intended, and that did not make her somehow have a

12   greater role in the scheme than Mr. Raji.

13           THE COURT:  All right.  I think it's a close question.

14   And I suspect that for appellate purposes, I could probably

15   infer in either direction, but I'm not going to apply the

16   enhancement.  My speculation is that Mr. Raji was indeed

17   superior to Ms. Martino-Jean and directed her, if not recruited

18   her, but I don't think the evidence clearly supports that.  I

19   don't think that inference is a necessary or mandatory one, and

20   I think it's undercut by evidence that she took the vast

21   majority of the criminal proceeds here.

22           Bottom line is, given his role, that he was sort of

23   the middleman broker.  His role was to find the accounts and

24   essentially direct deposits and withdrawals from those

25   accounts.  I think the text messages are as consistent with

just him performing that role and doesn't necessarily mean that

he was giving direction, let alone exercising the kind of

discretion that characterizes a manager or supervisor.

So bottom line is I think the record is not

substantial enough to draw the inference that the government is

urging.  I will not impose an enhancement for a leadership

role.  That reduces the guidelines calculation by two.  I

assume the government would concede, in light of that, that in

the event a zero-point offender amendment goes into effect,

that Mr. Raji would benefit from that as well; is that correct?

MS. KAMAL:  That's correct, your Honor.

THE COURT:  All right.  So as I have in other cases,

and I assume without objection from the government since it has

taken that position in other cases, I will essentially treat

that amendment as if it was in effect today.

So as a technical legal matter, I find, using the

November 2021 edition of the guidelines which is still in

effect, that the offense level is 31, the criminal history

category is I, and the guidelines range is 108 to 135 months'

imprisonment, with a supervised release range of one to three

years, and a fine range of 30,000 to $300,000.  But as an

effective matter, I will treat the guidelines range and the

offense level as 29, and the corresponding guidelines range is

87 to 108 months.

Turning to departures, obviously there are 3553

N9JJRAJS

1    variances, but do either counsel believe that a departure

2    within the guideline system as distinct from what has come to

3    be known as a variance would be warranted here?

4                MS. KAMAL:  No, your Honor.

5                THE COURT:  Mr. Schneider?

6                MR. SCHNEIDER:  No departures, your Honor.

7                THE COURT:  I've nevertheless reviewed the record and

8    agree that there is no basis or ground for a departure, again,

9    as distinct from a variance.

10               With that, I'll turn first to the government and then

11   to Mr. Schneider and then to Mr. Raji, if he wishes to be heard

12   as to sentencing.  Obviously I did preside over the trial.  It

13   obviously was also a long time ago.  I've also read your

14   lengthy sentencing submissions and you can assume that I'm

15   already familiar with what you are arguing there.  So you don't

16   need to repeat anything you've already argued, but anything

17   that you think would be helpful to me, you certainly can

18   address.

19               I'll start with the government, and in the course of

20   whatever you have to say, I would like you to spend a little

21   more time on the relationship with Martino-Jean, not

22   necessarily on factually their relationship, but it seems a

23   little bit hard to sort of square a 78-month sentence, which is

24   what you're asking, with the six-month sentence that was

25   imposed on her, recognizing, I'm inclined to agree, that

N9JJRAJS

1    Mr. Raji is the more culpable of the two.  Obviously his

2    criminal conduct here extended beyond the $1.7 million Marble

3    Arch transaction.  And there were the two similar schemes that

4    were presented at trial; there was the attempt, if you will,

5    after Ms. Martino-Jean.  So I fully recognize and plan to take

6    into consideration those things, but even so, six months versus

7    what you're asking for seems like a pretty heavy distinction.

8            So Ms. Kamal?

9            MS. KAMAL:  So your Honor, you've actually previewed

10   everything I was about to tell you.

11           So I guess where I will start, your Honor, here, is

12   relevant conduct.  Ms. Martino-Jean is not alleged to have

13   participated in the other schemes that were presented to the

14   jury at trial.  And as the Court is well aware, Mr. Raji

15   orchestrated and received the vast amount of the proceeds from

16   two other similar such phishing schemes that targeted a

17   hospital system and a public university.

18           Not only did the nature of the victims here warrant a

19   more severe punishment, but the pattern, your Honor, just

20   simply illustrates that this instance, the Marble Arch scheme,

21   was not a one-off.  It was not an act of desperation.  This is,

22   in fact, how Mr. Raji has supported himself for years.  And we

23   think of the text messages that were introduced at trial, in

24   particular the text messages with the cooperating witness,

25   Mr. Adeusi, who reached out to the defendant after the Marble

N9JJRAJS

Arch scheme had been uncovered and after the defendant was well

aware that this was obviously a fraudulent scheme, if he could

have even plausibly claimed that it wasn't before, and he

clearly wanted back in.  He was going to do it again.

Your Honor, there was no such evidence against Nancy

Martino-Jean, and, accordingly, the guidelines for Mr. Raji

include that relevant conduct which increased the loss amounts

from 1.9 million up to 3.9 million.  And so we think that is a

substantial consideration for the Court, and it warrants a

substantial sentence.

The second thing I would note is that Ms. Martino-Jean

also accepted responsibility.  She accepted responsibility

early and quickly, and that not only spared the government

resources, but it also reflects on the fact that this was not,

in fact, Ms. Martino-Jean's livelihood.  As I mentioned to the

Court, the government was aware at the time Ms. Martino-Jean

was charged and from the evidence that was seized in the course

of the investigation that she, in fact, did have other gainful

employment, legitimate employment.

Notwithstanding the nonprofits and the development

work that Mr. Raji points to, his purported development work

and the entities through which he purports to have done it have

never filed taxes, and the government was able to determine no

legitimate work ever done by him, at least in this country.

And so for that reason, your Honor, we think there's a stark

distinction in the 3553(a) factors between these two

defendants.

THE COURT: Last but not least, your Honor, the government has

tried to be very reasonable in its consideration of what would

be an appropriate sentence for Mr. Raji.  So the government has

not simply come in here and unthinkingly requested a guideline

sentence.  The guidelines range here is very high.  The

government and the defendant went to trial.  The government

nevertheless sat down, took seriously the factors such as the

defendant's health and the support from his family and his

other factors, and we have concluded, based on our

investigation and the evidence that was put before the jury,

that this is the reasonable sentence for a defendant who,

notwithstanding his other excellent qualities, I'm sure, as a

person, has nevertheless engaged in these types of serial

frauds for years and that have bilked victims of millions of

dollars.  And so we really think that a substantial sentence

here is warranted, notwithstanding the lesser sentence that

Ms. Martino-Jean received.

THE COURT:  And could I actually ask you to elaborate

on one thing you touched upon, which is, in your sentencing

submission there's a footnote that I would say casts some doubt

on the defendant's claims or representations with respect to

his work history.  Can you just elaborate on that?  You touched

briefly on it a moment ago, but other than the fact that he

N9JJRAJS

1   didn't file any taxes — and that's not an insignificant fact —

2   can you tell me what ground you have, if any, to doubt that he

3   has that work history or history of charitable involvement?

4            MS. KAMAL:  Can I have one moment, your Honor?

5            So your Honor, by pointing to the evidence of the lack

6   of any tax records here, what the government is really pointing

7   to, and what I can provide a little more color on, is the fact

8   that these entities were effectively shell entities.  The

9   government was unable to identify any operations, any

10  donations, any employees, any legitimate activities that were

11  undertaken by the two Emergent entities that Mr. Raji cites in

12  his submission.  And so, as far as the government can tell,

13  Mr. Raji had no other source of employment and engaged in no

14  other activity other than these particular schemes.

15           THE COURT:  And correct me if I'm wrong, but I think

16  the two other fraud schemes proved at trial did involve

17  transfers to the Emergent entity; is that correct?

18           MS. KAMAL:  That's correct, your Honor.

19           THE COURT:  And a final question just as a

20  housekeeping matter, your submission indicated that you were

21  trying to reach agreement on forfeiture and restitution.  I

22  think I then got proposed orders on both and with electronic

23  signatures from Mr. Schneider and Mr. Raji.  Is it your

24  understanding — I'll confirm with Mr. Schneider — that that is

25  agreed upon?

N9JJRAJS

1          MS. KAMAL:  Yes, your Honor.

2          THE COURT:  Mr. Schneider, first, just to get that out

3     of the way, is that correct?  Can I sign the proposed orders of

4     forfeiture and restitution and did you sign them and did your

5     client sign them?

6          MR. SCHNEIDER:  Yes, your Honor.  Yes, I was about to

7     mention that in a few minutes.  So the answer is yes.  I've

8     discussed with Mr. Raji the restitution order or the proposed

9     restitution order, and he authorized me to sign it on his

10    behalf.

11         THE COURT:  All right.  And as to sentencing, you may

12    proceed.

13         MR. SCHNEIDER:  Thank you, your Honor.

14         You know, as a lawyer, it's kind of difficult to talk

15    about acceptance of responsibility after trial on behalf of a

16    client because, as your Honor knows full well, there's going to

17    be an appeal, and so therefore it would not be wise for me to

18    advise him to make a statement.  But be that as it may, and we

19    said it in our written submission and I'll say it again,

20    Mr. Raji has accepted the jury verdict.  We can disagree with

21    it, but he has accepted it.  He made no attempts to either

22    intimidate witnesses either during trial or after trial

23    regarding sentences.  He didn't testify in any manner that

24    would indicate that he was trying to obstruct justice.

25         And I'm not going to go into the details again, but

N9JJRAJS

1    his medical condition is something that can't be ignored and,

2    in fact, has worsened over time since he's been in.  He went

3    from stage 3 to stage 4 chronic kidney, heart issues, etc.

4    That's all been documented in our submission.  I'll not go into

5    the details about that again.

6          Now, in an attempt to kind of mitigate that, the

7    government has filed a letter indicating that the BOP says, "No

8    problem, we can handle it.  We have medical facilities.  We

9    have different units within different facilities.  We can

10   handle it."  But I guess my question to your Honor is what else

11   are they going to say?  Are they going to say, "We can't

12   handle -- " and the fact is your Honor has been doing this a

13   long time.  I have.  They've never said they couldn't handle a

14   situation.  But we all know that what they say and what they're

15   actually capable of doing in terms of this serious medical

16   situation is not entirely accurate.

17         We all have anecdotal evidence about people not

18   getting the treatment that they need.  In fact, one of the

19   reasons your Honor let Mr. Raji out on bail after he'd been in

20   for a number of months was during COVID and the harsh

21   conditions and the fact he wasn't receiving appropriate medical

22   care.  And your Honor let him out, and how did Mr. Raji

23   respond?  He responded by not getting into any trouble at all.

24   So in terms of his medical conditions, that's a real problem.

25   He was on home incarceration for about seven months.  He's now

N9JJRAJS

1    been in custody for about 20 months in MDC, which as we all

2    know, is under extreme harsh conditions, not just with COVID,

3    but with the lockdowns and all the problems MDC is having, and

4    as your Honor knows and has in the past given consideration to

5    those harsh conditions at the time of some sentences.

6           Your Honor asked the government about

7    Ms. Martino-Jean's sentence of time served.  Well, okay, they

8    drew a distinction, but let's remember her guidelines were 33

9    to 41, okay?  And Mr. Raji's guidelines are more than two to

10   three times that, depending on how you look at it.  So I think

11   that what we're asking for, time served, sounds like it's

12   nothing, but it's almost a two-or-three-year sentence, given

13   the fact of already what he's been exposed to on home

14   incarceration and exposed to in the harsh conditions for at

15   least 20 months at MDC.

16          Let's also remember that he's going to be deported,

17   okay?  So whatever sentence your Honor gives him and whatever

18   conditions BOP can try to help, regardless of what his

19   conditions are, once he's done, he's being deported.  So your

20   Honor, I would ask for you to give a sentence which we ask for,

21   time served.  Or if that kind of sounds worse than it is in

22   terms of the Court feels like it sounds too lenient, I would

23   ask you to give him a sentence of 24 months, because I think

24   that would take into consideration the harsh conditions and his

25   medical condition specifically, as well as also Martino-Jean's

N9JJRAJS

1   sentence and the comparable sentences imposed on people who are

2   similarly situated.

3          Thank you, your Honor.

4          THE COURT:  Do you want to say anything in connection

5   with the employment record issue or simply rest on that?

6          MR. SCHNEIDER:  No.

7          THE COURT:  Okay.  Mr. Raji, Mr. Schneider suggested

8   that you might choose not to make a statement, but this is your

9   opportunity.  If there is anything you wish to say before I

10  sentence you, this is your opportunity to do so.  Do you wish

11  to say anything?

12         THE DEFENDANT:  No, thank you.

13         THE COURT:  All right.  Counsel, is there any reason

14  why sentence should not be imposed at this time?

15         MS. KAMAL:  No, your Honor.

16         MR. SCHNEIDER:  No.

17         I did forget one thing — I'm sorry — because you got

18  me sidetracked.  You asked me the restitution question when I

19  wasn't ready for it.

20         I did want to point out one of the reasons Mr. Raji

21  agreed to have the restitution order, even though I told him it

22  may not be a great idea, because what happens if the case gets

23  reversed on appeal?  Then he has this restitution order.  He

24  acknowledged that he should sign as a way of acknowledging his

25  responsibility.  So I wanted that to be included.  While he's

1    not prepared to accept responsibility on the record, I think

2    his signing of the restitution or his authorizing me to consent

3    to the restitution order is a view towards acceptance of some

4    sort of responsibility, your Honor.

5             And I'm sorry I interrupted you.

6             THE COURT:  No worries.

7             All right.  In imposing sentence, I'm required to

8    consider the factors set forth in 18, U.S. Code, Section

9    3553(a).  They include, first, the nature and circumstance of

10   the offense and the history and characteristics of the

11   defendant; second, the need for the sentence imposed to advance

12   the purposes of sentencing, namely, to reflect the seriousness

13   of the offense, to promote respect for the law and to provide

14   just punishment for the offense, to afford adequate deterrence

15   to criminal conduct, to protect the public from further crimes

16   of the defendant, and to provide the defendant with needed

17   education or vocational training, medical care, or other

18   correctional treatment in the most effective manner; third, the

19   kinds of sentences available; fourth, the guidelines range,

20   which I have found to be 108 to 135 months, but 87 to 108 with

21   the benefit of the forthcoming likely amendment; fifth, any

22   pertinent policy statement; sixth, the need to avoid

23   unwarranted sentencing disparities; and, seventh, the need to

24   provide restitution to any victims of the offense.  Ultimately,

25   I'm required to impose a sentence that is sufficient, but no

N9JJRAJS

1   greater than necessary, to comply with the purposes of

2   sentencing that I mentioned a moment ago.

3        Now, let me say that in the abstract, in a vacuum, I

4   think a substantial sentence here is certainly warranted.  The

5   crimes here are serious ones.  We heard testimony from the

6   stand from not one, but three victims of Mr. Raji's crimes, two

7   obviously relevant conduct, but be that as it may, three

8   victims of serious and sophisticated fraud schemes revealing

9   that Mr. Raji was intimately involved over a long period of

10   time in defrauding people of significant sums of money, and

11   also presumably causing them great anxiety and heartache and

12   trying to figure out the vulnerabilities of their information

13   technology systems and other such things.

14        It is certainly quite concerning.  The conduct and the

15   fact that it spanned the amount of time and the number of

16   victims that we know of is itself concerning.  Even more

17   concerning is Mr. Raji's apparent willingness to continue that

18   conduct, even after the arrest of Ms. Martino-Jean.  And I'm

19   referencing what Ms. Kamal was discussing earlier with respect

20   to the cooperator's approach to Mr. Raji.  Bottom line is I

21   think a substantial sentence is certainly warranted for that

22   conduct.

23        The need for deterrence is high because many people

24   who are involved in these schemes, certainly the collaborators

25   who are presumably not in the United States, are not often or

1     frequently or likely to be caught, so I think a significant

2     sentence is warranted in the abstract.

3                Having said that, we're not in the abstract or in a

4     vacuum here, and I think there are reasons, and the

5     government's position on sentencing reflects those reasons, to

6     justify a below-guidelines sentence.  One is that conditions of

7     confinement to date — I'm not sure the government acknowledges

8     those, but I have said before and repeat here that the

9     conditions of confinement, most significantly in 2020 when

10    Mr. Raji was in custody at the MCC, but even over the last year

11    that he's been in custody, are harsher conditions than I think

12    pretrial detainees or presentence detainees ought to be

13    enduring.  That means a lot of solitary confinement, effective,

14    if not literal.

15               Back in 2020, being in jail while the pandemic was

16    raging in New York was really not a place that you would want

17    to be, and the conditions were certainly, understandably from

18    the Bureau of Prisons standpoint, but nevertheless from a

19    detainee standpoint, incredibly harsh relative to what

20    conditions should or could be.  So I think that is a

21    significant factor, and as I said elsewhere or other judges

22    have said, one day under those conditions is equivalent to

23    something more than one day under other conditions.

24               Even more significant is Mr. Raji's serious medical

25    conditions, and the government does not dispute them and,

N9JJRAJS

1    indeed, I think acknowledges that they justify a

2    below-guidelines sentence.  I think that is true for two

3    reasons.  One is I imagine that conditions of confinement are

4    even more difficult to endure for somebody in Mr. Raji's

5    condition, certainly at the MCC and the MDC.  I trust that that

6    is the case even at a designated facility that's more equipped

7    to handle Mr. Raji's conditions.  I suspect it's fair to say

8    and is fair to infer that his conditions will make that time

9    more difficult to endure.  But second is, just as I do not

10   doubt that the Bureau of Prisons has the capacity to care for

11   Mr. Raji, but there's no question that he will not get as good

12   quality care in custody as he would out.

13        Now, I think, but for that last reason, I would think

14   the appropriate sentence here would be in the neighborhood of

15   48 to 60 months.  In light of that reason, however, I'm going

16   to impose a lower sentence.

17        I should say, lastly, I think the sentence imposed on

18   Ms. Martino-Jean does pose an issue here that needs to be

19   considered, which is to say that, to the extent that she's the

20   only other participant in this particular fraud scheme who

21   hasn't cooperated herself, the only other participant who has

22   been convicted and sentenced, the fact that she received a

23   sentence of only six or so months is hard to reconcile with a

24   much more severe sentence on Mr. Raji.

25        I, as I intimated earlier, absolutely firmly believe

N9JJRAJS

1    that Mr. Raji was a more significant player, as reflected in

2    the fact that he participated in not one but at least three

3    fraud schemes, as reflected in the fact that he was willing and

4    able to continue to participate in fraud schemes, and given the

5    nature of his role.  But be that as it may, that's still a

6    large disparity.  I recognize the government has cited several

7    cases involving similar conduct where defendants received

8    substantial sentences, and it's for that reason that I'm not

9    inclined to go as low as Mr. Schneider suggests, but I do think

10   that ensuring that there are no unwarranted disparities is a

11   relevant consideration here as well.

12           All that said, I will state the sentence that I intend

13   to impose and would ask you, Mr. Raji, if you're able, to

14   please rise at this time.

15           Mr. Raji, it is the judgment of this Court that you

16   are remanded to the custody of the Bureau of Prisons for a

17   period of 36 months, that is three years, on each count to be

18   served concurrently, to be followed by a period of three years

19   of supervised release.

20           During your term of supervised release, I certainly

21   expect you may be removed from the United States, and in that

22   regard it may be academic.  But during your term of supervised

23   release, you will be subject to the mandatory conditions set

24   forth on page 22 of the presentence report, including the fact

25   that you shall satisfy your financial obligations that I will

discuss shortly.

In addition, the standard conditions of supervised release, which are set forth on pages 22 to 24 of the presentence report and will be set forth in the judgment, shall apply.  And you must meet the special conditions set forth on page 24, including the search condition, providing the probation officer with access to any requested financial information, not incurring any new credit charges or opening additional lines of credit, and you shall obey the immigration laws and comply with the directives of immigration authorities.  And you shall be supervised in the district of your residence.

I do want to make clear that I would have imposed the same sentence, even if the guidelines -- the definition of loss included only actual loss.  I would disagree with that view of relevant conduct here because I think that somebody who tries to and intends to steal $1.7 million is more culpable than somebody who steals only 700,000, and to treat someone who fortuitously, because of the intervention of banks or credit cards or whatever the case may be ends up yielding only $700,000 shouldn't be treated the same as the latter.  So for that reason, even if the Third Circuit's view ultimately prevails on that issue, I would impose the same sentence.

I will not impose a fine because I find that Mr. Raji would not be able to pay a fine, and it would likely interfere with his restitution payments.  In accordance with the consent

N9JJRAJS

1    order of restitution, I will order Mr. Raji to pay $711,557.54

2    in restitution to the victims set forth in the attached

3    schedule, which will be filed under seal.  That is in

4    accordance with the terms of that order, so it is joint and

5    several with Nancy Martino-Jean and Afolabi Adeusi.  In

6    addition, I will impose a mandatory special assessment of $100

7    per count, for a total $400, which shall be due and payable

8    immediately.  And finally, as reflected in the consent order of

9    forfeiture, I order you, Mr. Raji, to pay forfeiture in the

10   same amount, $711,557.54 in United States currency in

11   accordance with the terms and conditions set forth in the

12   order.

13          Does either counsel know of any legal reason why the

14   sentence that I have stated should not be imposed?

15          MS. KAMAL:  No, your Honor.

16          Although I do want to clarify the record very briefly

17   after the Court imposes sentence.

18          MR. SCHNEIDER:  I'm sorry.  I couldn't hear.

19          MS. KAMAL:  No.  I have no objection to the sentence

20   as set forth by the Court, but I do want to correct the record

21   on one point before we adjourn.

22          THE COURT:  Why don't you do that now in case it does

23   matter with respect to the sentence.

24          MS. KAMAL:  I don't think it will affect the sentence,

25   your Honor.

N9JJRAJS

1          You asked the government whether or not we had

2     contacted all of the victims in advance of sentencing.  I know

3     that contact was made with both of the Marble Arch victims.  To

4     the extent that the 404(b) victims are not entitled to

5     restitution because the conduct that affected them was

6     uncharged, they were not contacted, to my knowledge and to the

7     knowledge of the other folks at this table.  I wanted to make

8     that clear to the Court.

9          THE COURT:  Thank you.  I'm not sure they technically

10    qualify as crime victims under the Crime Victims' Rights Act,

11    therefore, I'm not sure they're entitled to notice.

12         MS. KAMAL:  I agree, your Honor.  I didn't want to

13    leave a false impression with the Court.

14         THE COURT:  Thank you.  I appreciate that.

15         Mr. Schneider, are you aware of any legal reason why

16    the sentence should not be imposed as stated?

17         MR. SCHNEIDER:  No, sir.

18         THE COURT:  Sentence as stated is imposed.

19         Mr. Raji, you may be seated if you like.

20         I find that the sentence is sufficient, but no greater

21    than necessary, to satisfy the sentencing purposes set forth in

22    Section 3553(a)(2), including the need to promote respect for

23    the law, to provide just punishment for the offense, to afford

24    adequate deterrence both to Mr. Raji and others, and to protect

25    the public from further crimes of the defendant.

1          Mr. Raji, I certainly hope that, your health issues

2     notwithstanding, that you're able to serve your sentence

3     without serious problem and that you get out.  And whenever you

4     get out, wherever you end up — and I suspect it will not be in

5     the United States — I want you, first of all, that if you're

6     removed from the United States, you may not come back to the

7     United States, and if you do and you do so during your term of

8     supervised release, that this is both a violation of supervised

9     release and also a new crime for which you may be punished.

10          Second, I don't know if your work history is valid or

11     not valid.  I have my doubts, given the conduct proved at

12     trial, but be that as it may, I hope that the conduct that was

13     on display at trial is something that you put behind you and

14     that you use your talents — and I do not doubt that you have

15     real talents — to good use, to positive use, that you support

16     people like your cousin or niece or whoever it is who you've

17     adopted in some sense of the word, that you do that and support

18     your family in a way that is law abiding and not in a way that

19     you did in connection with trial.

20          All that is to stay I hope that this conduct does not

21     come to define you, and that you prove to be a better person

22     who does good in the world, not the kind of harm that you did

23     that we saw at trial.

24          Mr. Schneider, I would assume that you would ask me to

25     recommend a designation to an appropriate medical facility.

N9JJRAJS

1          MR. SCHNEIDER:  Yes.

2          THE COURT:  Any particular one or any particular

3     geographic area?  I assume either Butner or --

4          MR. SCHNEIDER:  Preferably a medical facility near

5     Florida where Mr. Raji was living.

6          THE COURT:  Do you know if there is one?  I know

7     Butner is in the Carolinas.

8          MR. SCHNEIDER:  I would suggest Butner in North

9     Carolina, yes, please.

10          THE COURT:  Why don't I specify that I think the most

11     significant matter is an appropriate medical facility or an

12     appropriate facility, given his serious medical conditions, and

13     secondarily, that he would like to be in a location as close to

14     Florida as possible.  I'll make that recommendation.

15          I don't think there are any open counts, unless there

16     is an underlying indictment.

17          MS. KAMAL:  No, your Honor, no open counts.

18          THE COURT:  Mr. Raji, let me say a couple things:  I

19     understand that you're preserving your right to appeal, and for

20     that reason are accepting only so much responsibility, but the

21     fact of the matter is I think the evidence at trial was

22     overwhelming of your guilt, and in that regard you do stand in

23     significant contrast to Ms. Martino-Jean, who accepted

24     responsibility for her conduct and didn't put the government

25     through its paces and go to trial.

1          I hope that you learn a valuable lesson from this, and

2     I hope that when you come out, as I said, that you put yourself

3     to positive and law-abiding purposes, not the purposes that we

4     saw at trial.  I assure you that if you don't and if you end up

5     back before me for a violation of supervised release, let alone

6     a new crime, that having given you a significant break on the

7     guidelines that you were facing, that you will not find me so

8     merciful, and I will not necessarily give you the benefit of

9     the doubt with respect to your health or otherwise.  So I want

10    you to understand that and understand what's at stake and

11    hopefully put this behind you, but only in a valuable way that

12    involves learning a lesson from it.

13         You do have the right to appeal your conviction and

14    sentence, and any notice of appeal must be filed within 14 days

15    of entry of the judgment of conviction.  If you cannot afford

16    to pay the cost of an appeal, you may apply for leave to appeal

17    *in forma pauperis*.

18         Mr. Schneider, you had suggested that you would plan

19    to request permission to withdraw.  I'm inclined to think that

20    you can and should raise that with the Court of Appeals to

21    ensure he gets new counsel for the purposes of an appeal.  I

22    guess all that is to say I could direct you to file a notice of

23    appeal on his behalf and then make an application to withdraw

24    before the Court of Appeals so they find somebody from the

25    appellate CJA panel who can represent Mr. Raji.  Is that okay?

N9JJRAJS

1          MR. SCHNEIDER:  Understood.  And yes, it's absolutely

2     okay.  And I'm going to speak to Mr. Raji for a couple of

3     minutes about whether he even wants to file a notice of appeal.

4     But if he does, I will file it on his behalf, one hundred

5     percent.

6          THE COURT:  It might be that the prudent thing is to

7     file it, given the issues that you alluded to earlier, your

8     role at trial, to file one if only as a protective measure, and

9     then with new counsel he can discuss with that counsel whether

10    to withdraw the notice.  That might be the more prudent course

11    here, but I'll leave that to you to discuss with Mr. Raji.

12         MR. SCHNEIDER:  I totally understand, and I appreciate

13    the — I won't say advice because you can't give me advice, but

14    the comment.

15         THE COURT:  Admonition, I think.

16         Anything else from the government?

17         MS. KAMAL:  No, your Honor.

18         THE COURT:  Mr. Schneider?

19         MR. SCHNEIDER:  No, your Honor.  Thank you very much.

20         THE COURT:  All right.  It is good to bring this

21    finally to conclusion.  And with that, we are adjourned.

22         Thank you very much.

23         (Adjourned)

24

25